442 P.2d 453

**STATE of Idaho, Plaintiff-Respondent,**

v.

**James HARRINGTON, Defendant-Appellant.**

**No. 10080.**

Supreme Court of Idaho.

June 21, 1968.

Robert V. Glasby, Lewiston, for appellant.

Allan G. Shepard, Atty. Gen. and Roger B. Wright, Deputy Atty. Gen., Boise, Roy E. Mosman, Pros. Atty. Nez Perce County, Lewiston, for appellee.

SPEAR, Justice.

James Harrington, the defendant and appellant herein, was charged with the crime of grand larceny in violation of I.C. §§ 18–4601 and 18–4604 by having on or about the 19th day of September, 1965, stolen and carried away certain personal property of another, to-wit, a white-face Hereford calf, red and white in color, said property being then and there the property of Louis Paris of Nez Perce County, Idaho.

The complaint and warrant for appellant's arrest were issued on October 22, 1965. Appellant was arrested in February, 1967, the Information was filed in June, 1967, and appellant was brought to trial and convicted of the above charges in June, 1967.

In appellant's own affidavit, in support of his motion to dismiss the action because he was not afforded a speedy trial, he states that he left the State of Idaho on or about the 13th day of September, 1965, that he knew nothing of the said warrant until June 29, 1966, and that no effort was made to serve the warrant before June 11, 1966, when it was delivered to the F.B.I. in Butte, Montana. Appellant returned to Idaho on February 9, 1967, after resisting extradition proceedings in Michigan.

The evidence adduced at the trial discloses that Paul Pentzer, a farmer living six miles north of Winchester, Idaho, found a white-faced polled calf head lying in the middle of the road while going to work on a Monday during the latter part

of September, 1965. Upon investigating further, Pentzer proceeded to the Niswander barn which he leased and which was just across the road from where the calf head was lying. In the barn he found wet blood, beer bottles, a flashlight and a bloody knife, none of which belonged to him. Pentzer then called Sheriff George Hill of Lewis County, Idaho, and later found the entrails from two animals and a second calf head near the same barn.

After Sheriff Hill received a call from Mr. Pentzer on Monday morning, September 20, 1965, he proceeded out to the Niswander barn where he took pictures of the animal head and a vehicle tire track in fresh cow dung within the barnyard. His investigation turned up two animal hides within the vicinity of said barn. These he took to the State Brand Inspector in Lewiston. The brand inspector sheared the hides and after observing the brands or markings thereon he called Mr. Paris and Mr. Heinzerling.

After receiving the phone call, Louis Paris, a grain farmer and cattleman living in the Culdesac area, went down to the stockyards and identified the red and white Hereford calf hide as his own because of the brand he observed on the hide. Mr. Paris was quite sure it was his brand even though part of it had been cut away so that it was not complete. His brand was "L.P." with the verticle line of the "L" and "P" on the same line. He observed the verticle line of the "L" and "P" and portions of the horizontal lines, and while admitting it could have been an "E" or a "B", he still was convinced it was his brand. Thereafter Mr. Paris accompanied Sheriff Hill to the Paris pasture on Craig Mountain in Nez Perce County where they discovered his gate was open and found tire tracks and blood in the area.

Sheriff Hill later went to the residence of Cecil Hill in Winchester where he observed a black 1950 or 1951 Chevrolet pickup truck and found traces of entrails, meat and blood on it. Mrs. Hill permitted him to look inside her refrigerator wherein he saw a piece of meat which still had alfalfa and other grasses on it.

Sheriff Hill also examined the tires of Hill's pickup and found them to be comparable to the tracks in the picture he had taken at the Niswander barn. However, he had no positive (scientific) way of knowing whether these tracks were made by the Hill pickup, and admitted numerous trucks had tires with comparable tracks.

George Hasenoehrl, another State's witness, observed a dark colored pickup leaving the vicinity of the Paris pasture and heading toward Winchester late one Sunday afternoon in the latter part of September, 1965. He also observed a black cow in the back of the pickup but did not recognize the three men inside.

Cecil Daniels, a resident of Winchester, observed Cecil Hill and two other men drive up to his home in a black Chevrolet pickup with two dead beef cattle in the back—one black and white, the other red and white. He could not pinpoint the exact date, although he knew it was a Sunday in September, 1965, probably the 19th. Hill asked Daniels to assist him and the other two men (one of whom Daniels identified as the appellant) in butchering some beef. Daniels refused but said that he would bring some beer out to them later that evening. Afterward he went to the Niswander barn with the beer and observed the three men finish butchering the second animal.

On cross-examination, Daniels was reminded about some statements he had made at a preliminary hearing (November 10, 1965) in the case of State v. Cecil Hill (Hill was later tried and convicted for the same offense), wherein Daniels had testified that he did not know either of the two other men with Hill. Daniels was also present at appellant's preliminary hearing on April 12, 1967.

On redirect questioning, Daniels testified that appellant's appearance had changed from the date of their first encounter but

that he still looked like the same man when he saw him again at the preliminary hearing.

Daniels' wife, Vivian, also identified Cecil Hill and the appellant, James Harrington, as two of the men who came to talk with her husband that Sunday.

On cross-examination this witness was likewise reminded of her previous testimony at the preliminary hearing of Cecil Hill wherein she had stated she did not know the two men other than Cecil Hill, and she admitted appellant had been pointed out to her by the prosecuting attorney during his preliminary hearing in April, 1967.

On redirect, Mrs. Daniels established she had seen appellant at Cecil Hill's place several times, prior to the Sunday visit at the Daniels place, and that she had seen him during this time both when he was wearing a beard and when he was clean-shaven.

Appellant took the stand on his own behalf and testified he had left Idaho around the 13th of September, 1965, to rejoin his wife in Saginaw, Michigan, and find employment. He arrived in Michigan on the 16th or 17th of September and thereafter secured employment as a carpenter later that month. Appellant also claimed he had never worn a beard during the months of August or September, 1965.

Wade Harrington, appellant's father, testified that appellant had been living with him until the first part of September, 1965, after which he left, telling his father he was going to Michigan. He had never known his son to wear a beard.

Lorna Harrington, appellant's wife, corroborated appellant's alibi to the effect that he had rejoined her in Michigan on Saturday, the 18th of September, 1965, and that the following week he found a job.

In rebuttal, the State produced two witnesses who testified that they had seen the appellant on Saturday, September 18, 1965, the day before the offense was committed at a time when appellant was allegedly in Michigan.

On this evidence the jury found the appellant guilty as charged and the trial court sentenced him to a maximum indeterminate term of five years in the state penitentiary.

In appealing from this judgment and sentence, appellant alleges the following specifications of error:

(1) Appellant was denied his constitutional right to a speedy trial because of the lapse of time between the filing of the complaint (October 22, 1965) and his arrest (February, 1967). Prejudice to his case resulted therefrom.

(2) The State failed to prove the corpus delicti of the crime pursuant to I.C. § 18-4604(3), namely, that the calf in question was owned or held for the purpose of "butchering and taking the meat products thereof."

(3) The Court erred in failing to instruct the jury that the corpus delicti must be first established.

(4) Certain remarks of the prosecuting attorney in his final argument were both improper and prejudicial.

Initially, appellant contends that he was denied his constitutional right to a speedy trial because of the lapse of time between the filing of the complaint (October 22, 1965) and his arrest (February, 1967), and that this delay resulted in prejudice to his case.

By appellant's own admission it is clear he left the State of Idaho in September, 1965, and did not return to Idaho until formal proceedings were instituted to obtain his extradition from the State of Michigan. As such, any delay in his arrest would be caused by appellant's voluntary absence from the State and under these circumstances he cannot now claim prejudice by this action.

In 21 Am.Jur.2d, Criminal Law, § 252 (1965), the general rule is stated as follows:

"A defendant's right under a constitutional provision guaranteeing speedy

trial, or under statutes implementing that guaranty, are not violated by a delay caused by his own condition or conduct. * * * An accused cannot take advantage of a delay for which he was responsible, whether caused by action or inaction on his part. This is true where delay is caused by his absence from the state, by his becoming a fugitive from justice, or by his failure to appear for arraignment or trial."

See also Annotations reported in 57 A.L.R.2d 302, 318 § 8 and 85 A.L.R.2d 980, 985 § 5.

While this court in Jacobson v. Winter, 91 Idaho 11, 415 P.2d 297 (1966) held that "* * * the time within which an accused is to be secured in his right to a speedy trial must be computed from the time the complaint is filed against him," it also went on to state:

"When the whereabouts of the accused are unknown, the time should be considered at least from the time the prosecuting authorities obtain knowledge of the accused's whereabouts, *when he is within the jurisdiction of this state*, whether incarcerated or not." (Emphasis supplied.) 91 Idaho at page 14.

Appellant next alleges that the state failed to prove the corpus delicti of the crime pursuant to I.C. § 18–4604(3), namely, that the calf in question was owned or held for the purpose of "butchering and taking the meat products thereof."

Appellant misreads the statute. I.C. § 18–4604 provides:

"Grand larceny is larceny committed in either of the following cases:

* * * * * *

"3. When the property taken is a horse, mare, gelding, cow, steer, bull, calf, mule, jack, goat, jenny, sheep or hog, or a fox of any breed or a cross thereof, when in captivity and owned or held for the purpose of breeding or of fur production, *or in the case of cattle, sheep, or hogs, the butchering and taking the meat products thereof*." (Emphasis supplied.)

The statute enumerates three separate situations wherein the crime of grand larceny may be committed: (1) where the property taken is a horse, mare, gelding, cow, steer, bull, calf, mule, jack, goat, jenny, sheep or hog; or (2) where the property taken is a fox of any breed or a cross thereof when in captivity and owned or held for the purpose of breeding or of fur production; or (3) *in the case of cattle, sheep, or hogs, the butchering and taking the meat products thereof.*

The emphasized portion of I.C. § 18–4604(3), supra, was added to the statute by the Idaho Legislature in 1965 (Idaho Session Laws 1965, ch. 213, § 1, p. 490), so that prior thereto the statute read exactly as it now stands except for the addition in 1965.

The crime with which appellant was charged and convicted was clearly set out in the information and was based on the first of the three separate situations pointed out hereinbefore. By its terms appellant could understand the nature of the crime charged without difficulty or misunderstanding and was thereby put on notice and given the opportunity to defend.

The evidence produced at trial clearly coincides with the charging portion of the information, namely, that appellant did "wilfully, unlawfully, intentionally and feloniously take, steal and carry away certain personal property of another, to-wit, a white-faced Hereford calf, red and white in color, said property being then and there the property of one Louis Paris of Nez Perce County, Idaho." By the terms of I.C. § 18–4604(3), it was not incumbent upon the prosecution to prove that the calf was held for the purpose of butchering and taking the meat products thereof.

Appellant also contends that the trial court erred in failing to give his requested Instruction No. 3 which provides:

"A conviction for crime cannot be had unless the corpus delicti, that is the fact that a crime has been actually perpetrated, is first established."

■ A comparison of the instructions given with requested Instruction No. 3 reveals that the trial court properly informed the jury on the required proof necessary to establish the essential elements of the corpus delicti. Refusal of the court to give a requested instruction which correctly states the law is not error where the same is adequately covered by the contents of the other instructions given. State v. Oldham, 92 Idaho 124, 438 P.2d 275 (1968); State v. Koho, 91 Idaho 450, 423 P.2d 1004 (1967).

■ Finally, appellant argues that certain remarks of the prosecuting attorney in his final argument were both improper and prejudicial, these objectionable remarks being:

"In addition to that I would ask you to consider the fact that as far as the brand is concerned, Chub Winslow, who did not appear here as a witness, but you recall Sheriff Hill said that Winslow, when he saw that hide and trimmed it down or sheared it down, recognized it apparently well enough that he called the owner, Mr. Paris. I would think that would be conclusive proof of whose animal it was. Of course, there is no question but what there was no permission or consent on behalf—or by Mr. Paris for these men to take this animal or do with it as their own."

No objection to these statements were made by counsel, except that in his final argument he commented as follows:

"Now I was a little bit shocked to have you asked to consider the testimony of a witness who didn't even show up, this man Winslow. This is something that I would say at the least that I didn't expect, that you would be asked to rely on some witness who didn't show up."

In addition, it is to be noted that the remarks of the prosecuting attorney were based upon the following testimony of Sheriff Hill admitted into evidence without objection during the course of trial:

"Q And what did you do with those hides after you found them?

"A Took them to Lewiston, State Brand Inspector. He sheared them and found brands, markings.

"Q You presented these animals—or the hides to the State Brand Inspector?

"A Yes.

"Q And then from—then what happened?

"A And I believe in recognizing the brands, and so forth, he called Mr. Paris and Mr. Heinzerling."

Under these circumstances no prejudice resulted from the prosecuting attorney's reference to the State Brand Inspector. See State v. Larsen, 91 Idaho 42, 415 P.2d 685 (1966).

The judgment of conviction is affirmed.

SMITH, C. J., and TAYLOR, McQUADE and McFADDEN, JJ., concur.