619 P.2d 787

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Dianne E. OWENS, Defendant-Appellant.**

**No. 12272.**

Supreme Court of Idaho.

Oct. 18, 1979.

On Rehearing Nov. 18, 1980.

Eli Rapaich, Lewiston, Gary E. Lofland, Boise, for defendant-appellant.

David H. Leroy, Atty. Gen., Lynn E. Thomas, Howard W. Carsman, Deputy Attys. Gen., Arthur J. Berry, Asst. Atty. Gen., Boise, for plaintiff-respondent.

BAKES, Justice.

Defendant appellant Dianne Owens ran a cattle ranch in 1974 and 1975 in the Upper Ford Creek Road area of Clearwater County, near Orofino, Idaho. In 1974 Mike and Jeannine Martin leased 160 acres of grazing land on Upper Ford Creek Road about 0.8 miles below Owens' ranch. In late October, 1974, the Martins brought their animals out of pasture from their Upper Ford Creek pasturage and discovered that a white faced, horned, brindle colored heifer cow with their brand lightly applied was missing from the herd. Owens was subsequently charged with theft of the heifer and convicted at a jury trial. She brings this appeal from the judgment of conviction for grand larceny entered following the trial. We affirm.

Defendant Owens raises numerous issues on appeal. Her primary contention is that the state's evidence was insufficient to prove the *corpus delicti*, i. e., that the crime charged—grand larceny—actually occurred. She argues that as a result of the state's failure to introduce evidence sufficient to support a finding that the heifer in question was the subject of a larcenous taking it was error for the trial court (1) to deny her motion for acquittal made at the close of the state's case in chief, and (2) to instruct the jury that an unexplained possession of recently stolen property by the defendant permits the jury to infer that the theft was committed by the defendant.

The defendant's plea of not guilty placed in issue every material allegation made in the indictment. I.C. § 19–1715; *State v. Cutler*, 94 Idaho 295, 486 P.2d 1008 (1971). One of the material allegations placed in issue by a plea of not guilty is that of the *corpus delicti* of the crime. *State v. Cutler, supra.* In a larceny charge, the elements which must be proven include the taking, carrying, driving or leading away, without

permission, of personal property of another, with the intent to permanently deprive the owner thereof. I.C. § 18–4601; *State v. Jesser*, 95 Idaho 43, 501 P.2d 727 (1972). Direct or circumstantial evidence which satisfies the factfinder beyond a reasonable doubt that the crime charged has been committed establishes the *corpus delicti. State v. Johnson*, 96 Idaho 727, 536 P.2d 295 (1975); *State v. Kombol*, 81 Idaho 530, 347 P.2d 117 (1969).

The evidence presented by the state in its case in chief tending to prove that the heifer was larcenously taken by Owens was as follows. Mike and Jeannine Martin, the animal's owners, testified that they put the heifer out to summer pasture on their Upper Ford Creek Road land the first week in May of 1974 subsequent to their repairing the pasture's fences, as required by their lease agreement. Mike Martin testified that the last time he saw the animal was in the second week of October, 1974, when he visited the pasture to check his herd. When the Martins removed their animals from pasture in the last week of October they were unable to find the heifer. The Martins testified that they checked their fences at that time and found them to be in good condition. They stated that they searched their pasture and neighboring lands and made inquiry of ranchers in the area, but were unable to locate the animal. The animal was reported as lost to local law enforcement agencies in early November.

Brady Jones, a 16 year old youth who occasionally worked for defendant Owens, testified for the state in its case in chief that while working for defendant Owens she and one Rick Pederson told Jones that they had discovered a cow alongside Ford Creek Road and had loaded it onto Owens' pickup truck. Jones further testified that the defendant Owens and Rick Pederson had taken the cow to the ranch of one David Hueth in Weippe, Idaho. Jones testified that he was told the animal was pregnant and that Owens was to receive the calf from Hueth when it was born.

David Hueth testified for the state on direct examination that he received the cow from defendant Owens in late 1974 or early 1975 in exchange for some work he had done for the defendant. A bill of sale from the defendant to Hueth representing sale of the animal to Hueth was admitted into evidence. Hueth testified that the animal was with calf when he received it and that he agreed to give Owens the calf when it was born. Investigation revealed that the animal Hueth received from Owens bore a lightly applied brand registered to the Martins. The Martins identified photographs of the animal Owens sold Hueth as being their animal they had reported missing.

■ There was substantial evidence presented by the state in its case in chief which, if believed by the jury, would support a finding that the Martin heifer was taken by the defendant Owens without the Martins' permission and with an intent to permanently deprive the Martins of possession of it. In Idaho, theft of a cow constitutes grand larceny. I.C. § 18–4604(3); *State v. Harrington*, 92 Idaho 317, 442 P.2d 453 (1968). The trial court's denial of defendant's motion for judgment of acquittal made at the close of the state's case in chief was not error.

■ Likewise, Owens' argument that the trial court erred in instructing the jury that the defendant's unexplained possession of recently stolen property may raise an inference that the defendant committed the larceny is without merit. Once the state submitted evidence which would support a finding that the heifer was stolen, it was not error for the trial court to give the instruction. *State v. Ponthier*, 92 Idaho 704, 449 P.2d 364 (1969); *State v. Haggard*, 89 Idaho 217, 404 P.2d 580 (1965); *see State v. Sullivan*, 34 Idaho 68, 199 P. 647 (1921). The defendant's participation in a theft may be inferred from the defendant's unexplained possession of recently stolen property. *United States v. Trice*, 476 F.2d 89 (9th Cir. 1973); *United States v. Martin*, 459 F.2d 1009 (9th Cir. 1972), *cert. denied* 409 U.S. 864, 93 S.Ct. 155, 34 L.Ed.2d 111 (1972). *Cf. Barnes v. United States*, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973) (where evidence established that defendant

charged with receiving stolen property possessed recently stolen Treasury checks payable to persons he did not know and there was no plausible explanation for such possession consistent with innocence, traditional common law inferences arising from possession of recently stolen goods satisfied reasonable doubt standard and comported with due process).

Defendant Owens also assigns as error several rulings by the magistrate made in binding Owens over to district court for trial. She argues that the magistrate erred in failing to dismiss the criminal complaint filed against her. She argues that the complaint failed to adequately describe the animal in question ("one horned, brindle, heifer cow, being the property of Jeannine Martin") and to properly specify the time that the larceny occurred ("between the middle of October, 1974, and the end of February, 1975").

■■■ A legally sufficient complaint need only be a simple and concise statement of the essential facts constituting the offense charged. I.C.R. 3. I.C. § 19–3901 provides that the criminal complaint must specify "such particulars of time, place, person and property as to enable the defendant to understand distinctly the character of the offense complained of, and to answer the complaint." However, it is not necessary that the complaint contain a formal or detailed description of the offense charged. "[A]ll that is required is a general description or designation of the offense so that the defendant may be given a fair opportunity to know, by proffered preliminary examination, the general character and outline of the offense for which he is to have an examination." *State v. McKeehan*, 91 Idaho 808, 818, 430 P.2d 886, 896 (1967); *State v. Woodward*, 41 Idaho 353, 238 P. 525 (1925); *State v. McGreevey*, 17 Idaho 453, 105 P. 1047 (1909). The complaint filed against Owens satisfies that standard.

Owens also argues that the state's evidence presented at the preliminary hearing did not demonstrate probable cause that a larceny had been committed. It is argued that the state's evidence showed merely that the defendant possessed a heifer belonging to Mike and Jeannine Martin, but did not prove that Owens participated in the theft as charged.

■■■ At the preliminary hearing the state is not required to prove the accused's guilt beyond reasonable doubt; it need only prove that a crime was committed and that there is probable cause to believe the accused committed it. *O'Neill v. State*, 92 Idaho 885, 452 P.2d 989 (1969); I.C. §§ 19–804 and –815. The decision of a magistrate that there exists probable cause to bind a defendant over to district court for trial on the charges should be overturned only on a showing that the committing magistrate abused his discretion. *State v. O'Mealey*, 95 Idaho 202, 506 P.2d 99 (1973); *Carey v. State*, 91 Idaho 706, 429 P.2d 836 (1967).

■■■ We find that the evidence presented by the state at the preliminary hearing supports the magistrate's decision that the Martin heifer was the subject of a theft and that there was probable cause to believe that defendant committed that crime. The state showed that the heifer reported lost by the Martins was the same animal as that received by David Hueth from defendant Owens in exchange for labor on the Owens ranch. Wade Ralston of the Clearwater County sheriff's office testified that in the course of his investigation of the loss of the Martin's heifer, he learned that defendant Owens had taken the animal and sold it to Hueth. Ralston's examination of the animal sold to Hueth revealed that the animal bore the Martins' brand. Hueth testified that he had purchased the animal from Owens and produced a bill of sale for the animal made out by Owens. The magistrate was free to disbelieve the explanation presented by Owens in her defense and accept the state's witnesses' testimony which supports a finding that the heifer had been stolen and that there was probable cause to believe that the defendant Owens had stolen it.

Owens maintains that the information filed in the district court in this matter

subsequent to the preliminary hearing and the magistrate's decision to bind the defendant over for trial should have been dismissed upon her motion. She asserts that the information failed to properly describe the heifer allegedly stolen and the date of the alleged larceny. The information filed in the district court reiterates the allegations set out above which were presented to the magistrate in the complaint at the preliminary hearing.

A legally sufficient information, like a criminal complaint, is a plain, concise and definite written statement of the essential facts constituting · the offense charged. I.C.R. 7(b). A legally sufficient information or indictment must contain "[a] statement of the acts constituting the offense in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended." I.C. § 19–1409(2); I.C. §§ 19–1411 and –1418; *In re Winn*, 28 Idaho 461, 154 P. 497 (1916).

With respect to defendant's claim that the time of the alleged offense was not stated in the information with adequate specificity, I.C. § 19–1414 provides that:

"The precise time at which the offense was committed need not be stated in the indictment; but it may be alleged to have been committed at any time before the finding thereof, except where the time is a material ingredient in the offense."

■ An information need not contain the precise time at which a crime is alleged to have been committed where time is not a material element of the crime charged. *State v. Oldham*, 92 Idaho 124, 438 P.2d 275 (1968); *State v. Larsen*, 76 Idaho 528, 286 P.2d 646 (1955); *State v. Rogers*, 48 Idaho 567, 283 P. 44 (1929); I.C. § 19–1414. *See generally* 41 Am.Jur.2d, Indictments and Informations, §§ 115–17 (1968).

■ The time period in which the state alleged that Owens stole the heifer is in this case four and one half months long. The information alleged that the offense occurred before the running of the statute of limitations; the time of the offense is not a material element of the larceny charge;

and the nature of the charged offense, theft of an ambulatory stock animal from summer pasture, is such that the exact date of a larcenous taking would likely not be discovered by the animal's owners or investigating authorities absent confession by the guilty party. The information filed against Owens in this case was adequate with respect to the time the crime charged was alleged to have occurred.

■ The physical description of the heifer alleged to have been stolen by Owens is also satisfactory for purposes of the information filed in this case. The purpose of the requirement that an information inform the defendant of the nature of the charges against him is to enable the accused to prepare a proper defense to the charge and to protect himself against a subsequent prosecution based on commission of the same acts. *State v. McKeehan, supra; Mollendorf v. State*, 67 Idaho 151, 173 P.2d 519 (1946). The information filed against defendant Owens in district court adequately sets out the nature and circumstances of the offense charged and a sufficient description of the animal alleged to have been taken to enable a person of ordinary understanding to adequately know the details of the crime the state charged and intended to prove at trial.

■ Owens asserts that the state denied her constitutional and statutory right to a preliminary hearing by filing an amended information prior to trial but subsequent to the preliminary hearing and filing of the original information. She argues that it was error for the district court to deny her a preliminary hearing on the amended information. The amended information added one witness to those listed in the initial information and supplemented the description of the heifer defendant was charged with taking by referring to its brand. The criminal charge, the parties, and the property in question were not altered. I.C.R. 7(d) authorizes amendment of an information at any time before verdict "if no additional or different offense is charged and if substantial rights of the defendant are not preju-

diced." In absence of a showing of prejudice arising from the amendments, defendant's argument is wholly without merit.

Owens next asserts that the trial court's failure to grant two of her pretrial motions for disclosure and production of statements made by the state's witnesses denied her rights to due process and constituted reversible error. Owens argues that she was unaware until trial of the substance of the testimony of Brady Jones and of one Margaret Hepburn and that, as a result, she was unable to properly prepare for the trial.

The district court granted two pretrial discovery motions filed by the defendant. The court on December 9, 1975, granted defendant's "Motion for Discovery and Inspection Pursuant to I.C.R. 16(a)" and her "Motion Pursuant to I.C.R. 12(d)(2)." These two motions required the prosecutor to make a disclosure of the evidence to which the defendant was entitled under I.C.R. 16. No contention is made by the defendant that the state failed to properly comply with these two discovery orders.

Owens made two other discovery motions which were not granted by the trial court. On November 18, 1975, she filed a "Motion for Disclosure" in which she sought to learn "if any of the state's witnesses have given testimony contradictory or materially different from that contained in any oral or written statements made by said witnesses and known to the prosecution without regard to whom said statements were made, whether said statements are contained in the prosecution's or police files or not." On November 21, 1975, the defendant filed an "Amended Motion for Production of Statements" in which she moved for "an order directing the prosecuting attorney to deliver as soon as reasonably practicable to counsel for the defendant copies of all material and relevant statements (written or otherwise recorded) pertaining to the testimony to be given herein by witnesses to be called by the prosecution at trial." Neither of these two motions were granted by the trial court, and Owens argues that denial of the motions constituted reversible error.

I.C.R. 16(a) governs generally the discovery rights of a criminal defendant in Idaho. I.C.R. 16(a)(1) enumerates certain types of information to which a defendant is entitled. I.C.R. 16(a)(2)(ii) then provides:

"Except as authorized in this subsection, this rule does not authorize the discovery of statements made by the prosecution witnesses or prospective prosecution witnesses to agents of the prosecuting attorney or to any official involved in the investigatory process of the case."

Defendant Owens does not argue, nor does it appear to us, that pretrial disclosure of any statements made by the state's witnesses Jones and Hepburn was required by I.C.R. 16.

■■■■ The state also has a constitutional duty to disclose to a criminal defendant upon request any evidence exculpatory or favorable to a defendant which would be material to preparation of a defense. *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Moore v. Illinois*, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972); *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *State v. Brown*, 98 Idaho 209, 560 P.2d 880 (1977); *State v. Harwood*, 94 Idaho 615, 495 P.2d 160 (1972). "The suppression of . . . exculpatory evidence by a prosecutor [is] a denial of due process." *State v. Harwood*, 94 Idaho at 617, 495 P.2d at 162. The defendant's right to disclosure of evidence in possession of the state, however, extends to evidence tending to *exculpate* the defendant. "The heart of the holding in *Brady*, is the prosecution's suppression of evidence, in the face of a defense production request, where the evidence is favorable to the accused and is material either to guilt or punishment." *Moore v. Illinois*, 408 U.S. at 795, 92 S.Ct. at 2568, 33 L.Ed.2d at 713.

■■■■ Defendant Owens' argument is that the motions for disclosure and for production of witness statements were "absolutely essential" to her defense. She does not assert that the prosecution failed to disclose evidence which was or might be exculpatory to her. The record indicates that the testimony of witnesses Jones and

Hepburn was completely inconsistent with the defendant's claim that she was innocent of the charge for which she was tried. Further, our examination of the record shows that the district court on November 25, 1975, granted defendant's motion for a continuance of the trial. Defendant stated at the hearing held upon her motion for a continuance that her request was made because she believed that Margaret Hepburn would testify differently at the trial than she did at the preliminary hearing. Hepburn had testified on defendant's behalf at the preliminary hearing, but testified on the state's behalf against Owens at trial. Defendant's motion for the continuance was made six weeks before the trial was actually held. The record indicates that she was aware at the time she made her motion for a continuance of Hepburn's intent to change her testimony. Owens can hardly claim that she was surprised and prejudiced when the state called Hepburn as its witness at trial. Further, the substance of Brady Jones' trial testimony was presented at the preliminary hearing through the testimony of Wade Ralston, deputy sheriff of Clearwater County. We do not perceive how Owens was prejudiced by the fact that she did not receive statements made by Jones to the prosecution prior to trial in view of Ralston's disclosure at the preliminary hearing of the substance of Jones' trial testimony. The trial court did not commit reversible error in denying defendant Owens' discovery motions, nor was it reversible error for the prosecution to fail to disclose any statements by Hepburn and Jones it may have possessed, even absent a court order directing it to do so.

Defendant Owens argues that the trial court should have granted her motion for a mistrial because of prosecutorial misconduct resulting in prejudice to her. She claims that prejudicial inferences against her were planted when the prosecutor asked one of the defendant's witnesses, Rick Pederson, whether he had ever stolen any cattle while working for the defendant.

In Idaho a witness cannot be questioned about his participation in wrongful acts having no connection with the matter on trial. *State v. Dayley*, 96 Idaho 527, 531 P.2d 1172 (1975); *State v. Muguerza*, 46 Idaho 456, 268 P. 1 (1928); I.R.C.P. 43(b)(6); *see also* I.C. § 9–1209 (repealed 1975). Hence, it was improper for the prosecution to inquire of witness Pederson about any wrongful conduct he may have participated in that did not culminate in a felony conviction admissible for impeachment purposes. The district court denied defendant's motion for mistrial following the prosecutor's alleged improper questioning of witness Pederson. The court ruled that because the witness did not answer the question, any prejudicial inferences resulting from the asking of the question could be cured by instructing the jury to disregard the question and to avoid speculating how the witness may have answered if allowed to do so.

The trial court is in the best position to judge the prejudicial effect caused by an improper but unanswered question. Our prior cases have held that it must be presumed that a jury obeyed the trial court's instructions to disregard an improper question and to avoid speculation as to what the witness might have answered if permitted to do so. *See State v. Rolfe*, 92 Idaho 467, 444 P.2d 428 (1968); *State v. Urie*, 92 Idaho 71, 437 P.2d 24 (1968). A motion for mistrial is directed to the trial court's sound discretion and the court's ruling thereon will not be disturbed unless it is shown that the trial court abused its discretion and that, as a result, the defendant's rights were prejudiced. *State v. Ramsbottom*, 89 Idaho 1, 402 P.2d 384 (1965). Where the witness was not allowed to answer the question and where the trial court, expressing its belief that an instruction would be sufficient to correct any prejudicial inferences which may have resulted from the question, instructed the jury to disregard the question, we do not find that the trial court's denial of defendant's motion for a mistrial constituted an abuse of its discretion.

Owens also alleges that her motion for mistrial should have been granted because the state called two witnesses in its

case in chief who admitted to having perjured themselves in prior proceedings. However, the fact that the state's case in chief may have consisted in part of testimony by witnesses who admitted to having testified falsely at the preliminary hearing did not compel the trial court to grant defendant's motion for a mistrial. In Idaho the credibility of a witness is to be considered by the finder of fact in its determination of the weight to be given the testimony by the witness. The fact that a witness called by the state has admitted perjuring himself is certainly relevant to a determination of the credibility to be afforded that witness's testimony. However, the witness's testimony is admissible into evidence. I.C. §§ 9–201 to –203; *Big Butte Ranch, Inc. v. Grasmick*, 91 Idaho 6, 415 P.2d 48 (1966); *State v. Orr*, 53 Idaho 452, 24 P.2d 679 (1933).

We have examined appellant's other assignments of error and have concluded that none of the trial court's rulings concerning those assignments constituted error.

Judgment affirmed.

DONALDSON, C. J., and SHEPARD, McFADDEN and BISTLINE, JJ., concur.

## ON REHEARING

PER CURIAM:

Petition for rehearing having been granted in the above entitled cause and the case rebriefed and reargued,

THE MAJORITY adheres to the views expressed in the Court's original opinion.

■ Appellant Owens on rehearing has raised for the first time the additional issue that the trial court's instruction to the jury that "[e]very person is presumed to intend the natural and probable consequences of his act" requires reversal of her conviction. A similar instruction, in *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), decided after Owens' trial and initial appeal, was held to impermissibly permit the jury in a criminal case to presume intent, contrary to the traditional due process requirement that a criminal defendant be presumed innocent until guilt is proven by the state beyond a reasonable doubt. Owens, however, did not object to the instruction at trial and, pursuant to Idaho law, must be deemed to have waived any objection to the instruction. I.C.R. 30; *State v. Collinsworth*, 96 Idaho 910, 539 P.2d 263 (1975). "The States, if they wish, may be able to insulate past convictions by enforcing the normal and valid rule that failure to object to a jury instruction is a waiver of any claim of error. *See, e. g.,* Fed.Rule Crim.Proc. 30." *Hankerson v. North Carolina*, 432 U.S. 233, 244, n.8, 97 S.Ct. 2339, 2345, n.8, 53 L.Ed.2d 306 (1977).

BISTLINE, Justice, dissenting.

*Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), had not been handed down when this case was laid before a jury. Nor was *Sandstrom* available at the trial of *State v. McCoy*, 100 Idaho 753, 605 P.2d 517 (1980). It is not surprising that the type of instruction disapproved in *Sandstrom* was not challenged either in this case or in *McCoy*. In *McCoy* as in this case, after announcing opinions affirming the convictions in each case, we granted petitions for rehearing. During this interim *Sandstrom* was decided, and brought to our attention. In *McCoy* our first opinion affirming the conviction was withdrawn, and a new opinion issued which reversed the conviction for prejudicial error at trial, and allowed McCoy a new trial—with specific directions that at the new trial the *Sandstrom* instruction would not be given. In this case, however, a majority of the Court are unwilling to reverse, despite a plethora of other error in the record, and hence this defendant will not be accorded the same treatment. It is said in defense of this disparate treatment that "Owens, however, did not object to the instruction at trial and, pursuant to Idaho law, must be deemed to have waived any objection to the instruction." Admittedly counsel for Owens was not any more omniscient than counsel for McCoy, and, sans any premonition of the imminent arrival of *Sandstrom*, no objection was made. The Court points to a footnote in *Hankerson v. North Carolina*, 432

U.S. 233, 244, n.8, 97 S.Ct. 2339, 2345, n.8, 53 L.Ed. 306 (1977) as the (gratuitous) advice prompting it to apply the "failure to object" rationale against Owens.

The logical question which here presents itself is whether this Court, still having this case within its bowels, should endeavor to do justice in view of the law as it has been pronounced whilst we deliberate, or is it the better course to seize upon some procedural excuse—in no way attributable to the defendant herself—for not doing so. The answer is found both in our own decision law, and in holdings of the Supreme Court of the United States. The impact of the *Sandstrom* instruction on the jury cannot be overestimated. No direct evidence linked the accused with an actual felonious taking of the animal. It was merely shown to have been in her possession some four months after being turned to pasture by the owner. All the State established was possession. The instruction allowed the jury to find the accused guilty of the offense merely because she at one time intended to and did take possession. The instruction eliminated the need to prove a felonious intent. An additional point is the concomitant error of instructing the jury that defendant's unexplained possession of the "recently stolen property raised an inference of guilt and may be enough by itself to justify conviction." This instruction improperly failed to leave it to the jury to determine whether or not the animal had ever in fact been stolen, but more damagingly amounted to a directed verdict against defendant in telling the jury that the inference was in fact raised, and was sufficient to justify a guilty verdict. Hence the instructions on "intent" and on possession of recently stolen property, taken together, placed the burden on defendant of proving her innocence, against both a contrary "inference" and a contrary "presumption"—each being couched in language which the jury could readily consider as mandatory.

Returning to my observation that the Court improperly declines to apply *Sandstrom* in its disposition of this appeal, I submit that *Hankerson* merits much closer attention than it has received:

"[w]here the *major* purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that *substantially* impairs its truth–finding function and so raises *serious* questions about the accuracy of guilty verdicts in past trials, the new rule has been given complete retroactive effect." 432 U.S. at 243, 97 S.Ct. at 2345, 53 L.Ed.2d at 316. (Emphasis in original.)

In *Ivan V. v. City of New York*, 407 U.S. 203, 204, 92 S.Ct. 1951, 1952, 32 L.Ed.2d 659, 660 (1972), in a per curiam decision, the Supreme Court had earlier held:

"Where the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth–finding function and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule has been given complete retroactive effect. *'Neither good–faith reliance by state or federal authorities on prior constitutional law or accepted practice, nor severe impact on the administration of justice has sufficed to require prospective application in these circumstances.'*" (Emphasis added.)

In *Hankerson* the Supreme Court added to the rule of law:

"It is true that we have said that the question of whether the purpose of a new constitutional rule is to enhance the integrity of the factfinding process is a question of 'degree,' *Johnson v. New Jersey*, supra, at 729, [86 S.Ct. 1772, 1778,] 16 L.Ed.2d 882, 8 Ohio Misc. 324, 36 Ohio App.2d 439; and when the degree to which the rule enhances the integrity of the factfinding process is sufficiently small, we have looked to questions of reliance by the State on the old rule and the impact of the new rule on the administration of justice deciding whether the new rule is to be applied, retroactively. *Stovall v. Denno*, supra; *Adams v. Illinois*, supra; *DeStefano v. Woods*, 392 U.S. 631, [88 S.Ct. 2093] 20 L.Ed.2d 1308, (1968). But we have never deviated from the rule stated in *Ivan V.* that ' "[w]here

the *major* purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth–finding function and so raises *serious* questions about the accuracy of guilty verdicts in past trials, the new rule [is] given complete retroactive effect.'" 407 U.S. at 204, 92 S.Ct. 1951, [1952] 32 L.Ed.2d 659 (emphasis added). The reasonable–doubt standard of proof is as 'substantial' a requirement under *Mullaney* as it was in *Winship.* Respondent's attempt to distinguish *Ivan V.* is without merit." 432 U.S. 233, 244, 97 S.Ct. 2339, 2345, 53 L.Ed.2d 315, 316 (emphasis in original).

In *Hankerson,* as in *Ivan V.,* there was not a single dissent. In *Hankerson* two members of the court concurred in the judgment and both wrote separately on the issue of retroactivity. Justice Marshall wrote:

"In *Williams v. United States,* 401 U.S. 646, 665, 91 S.Ct. 1148, 1159, 28 L.Ed.2d 388 (1971), I expressed the view that 'a decision of this Court construing the Constitution should be applied retroactively to all cases involving criminal convictions not yet final at the time our decision is rendered.' For reasons persuasively stated at that time by Mr. Justice Harlan, *Mackey v. United States,* 401 U.S. 667, 675, 91 S.Ct. 1160, 1164, 28 L.Ed.2d 404 (1971), I concluded that 'cases still on direct review should receive full benefit of our supervening constitutional decisions.' ... I remain committed to the approach outlined in my opinion in *Williams.* Since this case is here on direct review, I concur in the Court's holding that the rule announced in *Mullaney v. Wilbur,* 421 U.S. 684, 92 S.Ct. 1951, 32 L.Ed.2d 659 (1975), must be applied." 97 S.Ct. at 2346.

Justice Powell wrote:

"When the Court declines to hold a new constitutional rule retroactive, one chance beneficiary–the lucky individual whose case was chosen as the occasion for announcing the new principle–enjoys retroactive application, while others similarly situated have their claims adjudicated under the old doctrine. This hardly comports with the ideal of 'administration of justice with an even hand.' *Desist v. United States, supra,* [394 U.S. 244] at 255 [89 S.Ct. 1030, 1037, 22 L.Ed.2d 248] (Douglas, J., dissenting).

.    .    .    .    .

"A different approach to the retroactivity question is available. Described in detail in Mr. Justice Harlan's separate opinion in *Mackey, supra,* it contemplates, in rough outline, that courts apply a new rule retroactively in cases still pending on direct review, whereas cases on collateral review ordinarily would be considered in light of the rule as it stood when the conviction became final. Mr. Justice Harlan marshaled compellingly the reasoning supporting this view, 401 U.S., at 675–698, 91 S.Ct. at 1164, and for me to repeat the arguments here would be pointless. *I note simply that this approach is closer to the ideal of principled, evenhanded judicial review* than is the traditional retroactivity doctrine. At the same time it is more attuned to the historical limitations on habeas corpus, see *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), and to the importance of finality in a rational system of justice. See *Blackledge v. Allison,* 431 U.S. 63, 83, 97 S.Ct. 1621, 1634, 52 L.Ed.2d 136 (1977) (Powell, J., concurring).

"The case before us is here on direct review. I therefore agree with the Court that *Hankerson* is entitled to retroactive application of the *Mullaney* rule. Accordingly, I concur in the judgment." 97 S.Ct. at 2346 (emphasis added) (footnotes omitted).

Giving due consideration to the statements of Justice Powell and Justice Marshall, it is at once apparent that footnote 8 to the Court's opinion in *Hankerson* was aimed only at post–conviction cases–and not at all intended by its author, Justice White, as an avenue of escape from applying a new constitutional principle to a case still pending on direct review.

Such was exactly the situation in *Hankerson*, a direct appeal, by certiorari, to the Supreme Court from the Supreme Court of North Carolina. As noted in the opinion, the North Carolina high court refused to apply *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), on Hankerson's appeal because he had been tried on November 21, 1974, prior to the decision in *Mullaney* in June, 1975. 97 S.Ct. at 2343. As noted in footnote 8, the North Carolina Supreme Court passed on the validity of the instruction notwithstanding the lack of any objection at trial.

This was not unusual, assuming that that court, as has this, recognized that fundamental error going to the integrity of the factfinding process will necessitate a reversal even absent a saving objection at trial.

In *State v. Cariaga*, 95 Idaho 900, 523 P.2d 32 (1974), the opinion notes that "During oral argument before this Court the question was raised as to whether or not appellant was convicted of the crime with which she was charged." 95 Idaho at 902, 523 P.2d at 34. To a contention that the defendant had waived his right to that challenge by failing to object, this Court said:

"Rather, we feel the issue of whether or not appellant has waived any objections she might have is controlled by our decision in *State v. Haggard*, 94 Idaho 249, 486 P.2d 260 (1971), where we held that *where a fundamental error has been committed in a criminal trial, this Court may consider it even though no objection was made in the trial court.*

' "The appellant contends that he was denied due process and deprived of a fair trial because the prosecuting attorney elicited at trial that Haggard did not tell the judge of his alibi at the preliminary hearing. Appellant maintains that this information should not have been made available for the jury's

consideration and by so doing the lower court deprived him of a fair trial. Counsel for defendant failed to raise an objection to the cross-examination at the time of trial and ordinarily this Court would not consider this assignment of error. However the obligation of the state to see that defendant receive a fair trial is primary and fundamental. [Citing cases] In case of fundamental error in a criminal case the Supreme Court may consider the same even though no objection had been made at time of trial.' 94 Idaho at 251, 486 P.2d at 262.

"Because the variance between the complaint and conviction *denies the appellant due process of law*, she has not waived her right to object even though no objection has been previously made. Neither can this Court ignore the issue because it has not been assigned as error in the original briefs." 95 Idaho at 903–04, 523 P.2d at 35–36 (emphasis added).

In *State v. Swenor*, 96 Idaho 327, 528 P.2d 671 (1974), Justice Bakes in dissent, joined by Justice McQuade, urged that it was error on the part of the Court not to consider on appeal as "fundamental error" admission of certain hearsay, where the basis for refusing was only that no assignment of error was made in this Court:

"While assignments of error are helpful in having issues reasonably but not rigidly clarified in advance, they should not become a vehicle by which this Court regresses to the 19th century technicalities of the common law pleading system." 96 Idaho at 334, 528 P.2d at 678.

The evidence before the jury showed at best (accepting it as favorable to the prosecution) that she took into her possession an animal, marked with no visible brand or indicia of ownership, wandering at large on a public road.[1]

---

1. So viewed, her situation was in no way any different from that of a driver in downtown Boise, Idaho, lucky enough to come across a carton of beef lying on the street at an intersection, which repose it obviously found in sliding out of a pickup rounding the corner. The average appropriator of the carton of beef, or the unmarked animal at loose in the country, may be wrong in exercising dominion in each case, but should hardly be presumed to have had the intention of committing the act of larceny, and hardly be made to establish his innocence by the shifting of the burden of proof.

The Court's opinion, to which four members continue to adhere, disposes of a major assignment of error with a three–sentence paragraph which, omitting citations, reads:

"... Owens' argument that the trial court erred in instructing the jury that the defendant's unexplained possession of recently stolen property may raise an inference that the defendant committed the larceny is without merit. Once the state submitted evidence which would support a finding that the heifer was stolen, it was not error for the trial court to give the instruction. The defendant's participation in a theft may be inferred from the defendant's unexplained possession of recently stolen property."

The primary fault in the Court's ready disposition of this issue is found in the fact that the court below did not instruct that unexplained possession "may" raise an inference in question. Rather, the trial court instructions did not leave it to the jury to make the determination.

"INSTRUCTION NO. 41. You are instructed that the law in this state is that the burden on the State is to prove that the animal found in defendant's possession was the same animal stolen in the larceny. Once the State has done this, *the unexplained possession of recently stolen property raises an inference of guilt and may be enough by itself to justify conviction for larceny.* It is the duty of the jury to determine from the evidence whether or not possession of the animal has been sufficiently explained." (Emphasis added.)

The Court, I fear, fails to note that the jury was thus instructed that unexplained possession *raises an inference*, not that it *may* raise an inference. Instructing the jury that an inference was in fact raised, and being further told that such an inference may be enough by itself to justify a conviction, *was to direct a verdict against* the defendant unless she was able to persuade them otherwise by a sufficient explanation. No other construction is possible, and in this manner of a conclusive presumption the instruction is as unconstitutional as

the instruction struck down in *Sandstrom.* As the *Sandstrom* court wrote:

"Sandstrom's jurors were told that 'the law presumes that a person intends the ordinary consequences of his voluntary acts.' They were not told that they had a choice, or that they might infer that conclusion; they were told only that the law presumed it. It is clear that a reasonable juror could easily have viewed such an instruction as mandatory." 99 S.Ct. at 2454.

Accordingly, as per the foregoing quotation, it rejected the argument that the instruction there challenged "merely described a permissive inference–that is, it allowed but did not require the jury to draw conclusions about defendant's intent from his actions–and that such inferences are constitutional." 99 S.Ct. at 2454.

Here, in *Owens'* case, the jury was not given any choice in the matter. If the giving of any such instruction was here at all appropriate–a matter concerning which I have grave doubts–the one which was given and of which the Court today approves, was unconstitutional.

A proper instruction, and one which the Court apparently believes was given, is found in *Barnes v. United States*, 93 S.Ct. 2357, 412 U.S. 837, 37 L.Ed.2d 380 (1973):

"Possession of recently stolen property, if not satisfactorily explained, is ordinarily a circumstance from which you may reasonably draw the inference and find, in the light of the surrounding circumstances shown by the evidence in the case, that the person in possession knew the property had been stolen." 412 U.S. at 839–40, 93 S.Ct. at 2360.

The differences between the challenged instruction and the *Barnes* instruction are considerable, but in the main it is sufficient to point out that a proper instruction would allow for a permissive inference only, that is, the inference "may" be drawn.

The *Barnes* instruction went even further in protecting against the instruction being construed as mandatory, adding as a second paragraph that which was omitted in *Owens'* case:

"However, you are never required to make this inference. It is the exclusive province of the jury to determine whether the facts and circumstances shown by the evidence in this case warrant any inference which the law permits the jury to draw from the possession of recently stolen property." 412 U.S. at 840 n.3, 93 S.Ct. at 2360 n.3.

Making it difficult to understand why the trial court here not only misworded the first paragraph of the *Barnes* instruction, and failed to give the second paragraph, is the singular fact that both paragraphs were set forth in a footnote to *State v. Trowbridge*, 97 Idaho 93, 97 n.15, 540 P.2d 278, 282 n.15 (1975). In that case this Court considered a case where defendant was charged not with stealing, but with receiving stolen property. The Court there discussed permissive inferences and presumptions, holding erroneous an instruction given to the jury that "a *presumption* of guilt arises when the defendant is found in possession of recently stolen property...." *Id.* at 95, 540 P.2d at 280. The Court there pointed out that although earlier decisions had approved of inference instructions in larceny cases, and only to the extent of permissive inferences, more recent Idaho cases were said to have "held that a *presumption* of guilt arises from the unexplained possession of recently stolen property." *Id.* at 95–96, 540 P.2d at 280–81. And apparently that is the status of the Idaho Supreme Court pronouncements at the present time, with the Court today upholding an instruction which is mandatory rather than permissive, but the Court saying as it does that "[t]he defendant's participation in a theft *may be inferred* from the defendant's unexplained possession of recently stolen property." (Again, my emphasis added.)

In *Trowbridge* the instruction under challenge told the jury that unless possession is satisfactorily explained *the presumption of guilt arises*. This is no more and no less than the instruction here, which told the jury that the unexplained possession *raises an inference of guilt sufficient in itself to justify conviction*. In both cases the jury cannot but be said to be made to understand that such unexplained possession is tantamount to guilt.

In *Trowbridge* the Court recognized that the task before it was "to determine if the instant *presumption*, allowing the jury to legally *presume* an ultimate fact, which is one of the elements of the crime to be proved by the State beyond a reasonable doubt (knowledge or belief), from the proof of another fact (possession), affords due process, be that analysis labeled the 'rational connection' test or 'reasonable doubt' standard." *Id.* at 97, 540 P.2d at 282 (emphasis in original). Applying the rational connection of *Tot v. United States*, 63 S.Ct. 1241, 319 U.S. 463, 87 L.Ed. 1519 (1943), the Court in *Trowbridge* held that the instruction there given–a presumption of guilt arises–was improper, but that a jury could properly be instructed that unexplained possession of recent stolen property "is a circumstance tending to *infer* knowledge of the unlawful character of the property, and that circumstance taken together with a necessary quantum of other incriminating evidence, *may* be used by the jury to reach a verdict, in light of their collective common experience, and the circumstances surrounding the case." *Id.* at 97, 540 P.2d at 282 (emphasis in original).

The language adopted by the Court in articulating that holding was taken almost verbatim from the *Barnes* instruction, of which the first two paragraphs were footnoted, and attention drawn thereto immediately following the *Trowbridge* holding.

Essentially, that which the Court did in *Trowbridge* was to make a proper application of *Barnes* by invalidating the unconstitutional instruction that a presumption of guilt arose–at least on charges of receiving stolen property. Of extreme significance in *Trowbridge* is the total acceptance of *Barnes* where the inference in question comes from the common law rather than from the legislature:

"We must also agree with *Barnes*, that the courts, too, are bound by due process in establishing rules of evidence: 'Com-

**646**

mon–law inferences, like their statutory counterparts, must satisfy due process in light of present day experience.'" 97 Idaho at 97, 540 P.2d at 282 (quoting *Barnes v. United States*, 412 U.S. 837 at 844–45, 93 S.Ct. 2357 at 2362 (1973)). Here, of course, our concern is not with the charge of receiving or possessing stolen property, but with the heavier charge of having stolen the property in the first place. In declining to approve the *arise of a presumption* instruction in *Trowbridge*, the Court mentioned that such *presumption* instructions had been applied in prosecutions for larceny and burglary, 97 Idaho at 96, 540 P.2d at 281, saying that "[j]ury instructions denominating the principle that a <u>presumption of guilt arises</u> from the possession of recently stolen property have been sanctioned by this Court." *Id.* at 95, 540 P.2d at 280 (emphasis added). As will be pointed out, such *sanction* to giving the *presumption* instruction in larceny and burglary cases was entirely tacit. As the Court in *Trowbridge* mentioned, earlier cases, of which *State v. Davis*, 57 Idaho 413, 65 P.2d 1385 (1937), was chronologically the latest, show that this type of instruction had been since days of statehood properly couched in terms of being found in the possession of recently stolen property as "a <u>circumstance</u> from which, when unexplained, the guilt of the accused <u>may be inferred.</u>" 97 Idaho at 95, 540 P.2d at 280. (The underscoring is not my own, but is in the original, clearly indicating the emphasis which the Court in that case was placing upon the fact that, in a circumstantial evidence case, being found in possession of stolen property is but another circumstance of the case, and, as is so with all circumstances, *may give rise* to an inference of fact on the defendant's guilt.)

Subsequent to *Davis*, "[l]ater decisions of this Court for the most part abandoned this permissive inference theory and have, instead, held that a *presumption* of guilt arises from the unexplained possession of recently stolen property." 97 Idaho at 95–96, 540 P.2d at 280–81. The earliest of these later decisions, in fact the turning point in the evolution of a theory which did not evolve but just happened, is said to be

*State v. Gilbert*, 65 Idaho 210, 142 P.2d 584 (1943). 97 Idaho at 96 n.5, 540 P.2d at 281 n.5. The latest in the evolution was said to be *State v. Ponthier*, 92 Idaho 704, 449 P.2d 364 (1969), discussed *infra*.

The exact statement from *Gilbert* was: "In the absence of satisfactory explanation by appellant as to the fact and circumstance of possession, *this raised a presumption that he committed the larceny. (State v. Bates*, 63 Idaho 119, 117 P. (2d) 281.)" 65 Idaho at 219, 142 P.2d at 588 (emphasis added). *State v. Bates*, however, contained no language which authorized or suggested the giving of an instruction embodying such statement. Instead, *Bates*, making use of the language of the type last used in *Davis*, wherein the sole issue was the sufficiency of the evidence to sustain the conviction (which was reversed for insufficiency), and with no challenge whatever made to the instructions given by the trial court, said this:

> "As against this contention [the insufficiency of the evidence] the state urges that the recent unexplained possession of stolen property is a circumstance from which the guilt of the accused may be inferred. Such is undoubtedly the law in this state. (*State v. Seymour*, 7 Ida. 257, 61 Pac. 1033; *State v. Marquardson*, 7 Ida. 352, 62 Pac. 1034; *State v. Sanford*, 8 Ida. 187, 67 Pac. 492; * * * [and other citations down to and including] *State v. Vanek*, 59 Ida. 514, 84 Pac. (2d) 567.)" 63 Idaho at 121, 117 P.2d at 281.

Not only does the *Bates* statement not justify the statement found in *Gilbert*, but in the latter case as well as in the former there was no issue presented to the Supreme Court as to the validity of any instruction as to what inference or what presumption arose, or might arise, as to the accused being found in the possession of recently stolen property. As in *Bates*, the statement found in *Gilbert* was made only in connection with the assignment of error that the evidence was insufficient to justify the verdict.

Moreover, an examination of the original *Gilbert* appeal record on file with the clerk

of this Court reveals that the trial court gave no instruction whatever of the type under consideration. The *Davis* instruction was not given; the so-called *Gilbert* instruction was not given. The district judge who instructed the jury in Gilbert's burglary trial told the jury only that they were the sole and exclusive judges of the facts, of what was proven in the case, and that in making such determination the jury should take into consideration the facts and circumstances placed in evidence. Similarly in a recent larceny case before this Court a more recent post mortem review of the instructions given in that case shows that another able trial judge avoided the giving of either the presumption–of–guilt instruction, or the may–raise–an–inference instruction–notwithstanding that *Trowbridge* was implicit Supreme Court sanction to the giving of even the more damaging presumption–of–guilt instruction. *State v. Erwin*, 98 Idaho 736, 572 P.2d 170 (1977). Therein instruction no. 7 in a set of extremely well worded but succinct instructions, after pointing out that the two types of evidence from which a jury may properly find a defendant guilty of a crime include circumstantial evidence as well as direct evidence, told the jury that circumstantial evidence "is proof of certain facts and circumstances from which the jury may infer other connected facts which usually and reasonably follow according to the common experience of mankind." This instruction, as with that given in .Gilbert, was sufficient to allow argument to the jury that where a defendant is found in possession of recently stolen property, such is a circumstance from which the guilt of the accused may be inferred, as set forth in *Bates*, and similar to the language of *Davis* and earlier larceny and burglary cases.

The *Ponthier* instructions, on file in the clerk's office, did not include either a presumption–of–guilt instruction, or a may–give–rise–to–an–inference instruction. Rather the jury was instructed only, as to the circumstantial evidence, that "[a]n inference is a logical conclusion which may be reasonably drawn from a proved fact. A presumption is an assumption which the law expressly directed to be drawn from a proved fact. Unless declared by law to be conclusive, a presumption may be overcome by other evidence, but unless it is overcome, the jury is bound to find in accordance with the presumption."

As the *Ponthier* opinion states, defendant there on the appeal raised only the challenge that the evidence was insufficient to sustain the conviction. Defendant there cited 13 Am.Jur.2d *Burglary* § 58, p. 357, for the proposition that, absent other evidence connecting a defendant with the burglary, "a secondhand possession of the stolen property is not sufficient to raise an inference of guilt since the possession must be exclusive of a previous possession by others." The State's brief, citing no Idaho cases, but instead cases from California, Iowa, Illinois and Georgia, contended that "possession of items taken in the burglary is sufficient to authorize an inference of guilt unless possession is satisfactorily explained . . ."

The State cited the Idaho cases of *State v. Lott*, 90 Idaho 161, 409 P.2d 119 (1965) and *State v. Haggard*, 89 Idaho 217, 404 P.2d 580 (1965), for the proposition that "[o]n a charge of burglary, the mere possession of recently stolen goods by the Defendant is sufficient evidence upon which to convict the Defendant."

As will be noted, the Court's opinion in *Ponthier* observed that "[t]he defendant seemingly does not question the rule of law that the unexplained possession of recently stolen property raises an inference of guilt." 92 Idaho at 705, 449 P.2d at 365. *Ponthier*, then, as with *Gilbert*, has to be re–evaluated contrary to the intimation of the note in *Trowbridge*. It, too, presented the court with no issue of the giving of the instruction with which we are here concerned, and with which the court was concerned in *Trowbridge*.

So much for a review of those Idaho cases which caused the Court to say in *Trowbridge* that the Court decisions had, beginning with *Gilbert*, "for the most part abandoned this permissive inference theory and

have, instead, held that a *presumption* of guilt arises from the unexplained possession of recently stolen property." 97 Idaho at 95–96, 540 P.2d at 280–81. As I pointed out above, this was not any evolution of the law, but rather a drastic change in fundamental law born of an inadvertent misstatement in *Gilbert*–in which case there was no issue whatever on the instruction. The misstatement, occasioned by this Court, has survived until this date, although it came under scrutiny in *Trowbridge* wherein the Court refused to approve an instruction telling the jury that a presumption of guilt arises from possession in a possession case–nevertheless the Court leaving stand the impression that such an instruction would be proper in a larceny or burglary case. Unfortunately, in *Trowbridge* the Court did not delve deeper in an effort to ascertain from whence came the drastic change in the law as stated in *Gilbert*.

Of that the correct and constitutionally sound principle of law was set forth in *Davis* and earlier cases there can be no doubt.

The Supreme Court of the United States in *Barnes*, 412 U.S. at 843, 93 S.Ct. at 2362, noted that the inference which may be drawn based upon proof of possession of stolen property is "a traditional common–law inference deeply rooted in our law. For centuries courts have instructed juries that an inference of guilty knowledge may be drawn from the fact of unexplained possession of stolen goods." The instruction given in *Barnes* was by the *Barnes* court observed as only permitting the *inference* of guilt from unexplained possession of recently stolen property. *Id.* at 845, 93 S.Ct. at 2362. A footnote to that statement contains the crucial statement: "The jury is not bound to accept or believe any particular explanation any more than it is bound to accept the correctness of the inference." *Id.* at 845 n.9, 93 S.Ct. at 2362, n.9. Obviously an instruction that instructs the jury not just that inference *may* arise, but that an inference *does* arise, gives the jury no leeway to believe or disbelieve, and in that light the harm is not in any way lessened by use of the word "inference" rather than

"presumption." The jury must be told that unexplained possession is but a circumstance from which an inference of guilt may be drawn.

It was ever so in Idaho until the unfortunate choice of language in *Gilbert*, which was not wholly corrected in *Trowbridge*. In *State v. Stanford*, 8 Idaho 187, 67 P. 492 (1902), a Court which one would naturally expect to find well versed in "traditional common–law inferences" said that which the United States Supreme Court would later in *Barnes* also say: "[T]he rule of law [is] that possession of recently stolen property is a circumstance from which, when unexplained, the guilt of the accused *may be inferred*." 8 Idaho at 188, 67 P. at 493 (emphasis added).

To those who would fain argue to the contrary, I suggest only that the United States Supreme Court in *Sandstrom*, where the Montana Supreme Court had earlier upheld the giving of the "presumption" instruction, responded to the state of Montana's argument "that the instruction merely described a permissive inference–that is, it allowed but did not require the jury to draw conclusions about defendant's intent from his actions ...", saying that such "arguments need not detain us long .... It is clear that a reasonable juror could easily have viewed such an instruction as mandatory." 99 S.Ct. at 2454.

I fail to see how it can be argued here that the instruction under fire was any less mandatory, and hence any less unconstitutional. The *Owens* instruction, as pointed out, first of all is absolutely not couched in terms of being a permissive inference. Rather it was couched in terms mandatory, and to the extent that the jury was informed that the unexplained possession of recently stolen property raises (not that it might raise) an inference of guilt, "and may be enough *by itself* to justify conviction for larceny." An inference, whether it be called by that name or by any other, which tells the jury that such inference is in fact raised, and by itself justifies the juror in finding the defendant guilty, unless she has

explained it, is mandatory and is unconstitutional. As to any argument that it was at least a rebuttable inference, we are, or should be, bound by that which the unanimous *Sandstrom* court said:

"In the alternative, respondent urges that even if viewed as a mandatory presumption rather than as a permissive inference, the presumption did not conclusively establish intent but rather could be rebutted. On this view, the instruction required the jury, if satisfied as to the facts which trigger the presumption, to find intent *unless* the defendant offered evidence to the contrary. Moreover, according to the State, all the defendant had to do to rebut the presumption was produce 'some' contrary evidence; he did not have to 'prove' that he lacked the required mental state. Thus, '[a]t most, it placed a *burden of production* on the petitioner,' but 'did not shift to petitioner the *burden of persuasion* with respect to any element of the offense...' Brief for Respondent 3 (emphasis added). Again, respondent contends that presumptions with this limited effect pass constitutional muster.

"We need not review respondent's constitutional argument on this point either, however, for we reject this characterization of the presumption as well. Respondent concedes there is a 'risk' that the jury, once having found petitioner's act voluntary, would interpret the instruction as automatically directing a finding of intent. Tr. of Oral Arg. 29. Moreover, the State also concedes that numerous courts 'have differed as to the effect of the presumption when given as a jury instruction without further explanation as to its use by the jury,' and that some have found it to shift more than the burden of production, and even to have conclusive effect. Brief for Respondent 17. Nonetheless, the State contends that the only authoritative reading of the effect of the presumption resides in the Supreme Court of Montana. And the State argues that by holding that '[d]efendant's sole burden under instruction No. 5 was to produce *some* evidence that he did not intend the ordinary consequences of his voluntary acts, not to disprove that he acted

"purposely" or "knowingly," ' 580 P.2d at 109 (emphasis added), the Montana Supreme Court decisively established that the presumption at most affected only the burden of going forward with evidence of intent–that is, the burden of production.

"The Supreme Court of Montana is, of course, the final authority on the legal weight to be given a presumption under Montana law, but it is not the final authority on the interpretation which a jury could have given the instruction. If Montana intended its presumption to have only the effect described by its Supreme Court, then we are convinced that a reasonable juror could well have been misled by the instruction given, and could have believed that the presumption was not limited to requiring the defendant to satisfy only a burden of production. Petitioner's jury was told that '*the law presumes* that a person intends the ordinary consequences of his voluntary acts.' They were not told that the presumption could be rebutted, as the Montana Supreme Court held, by the defendant's simple presentation of 'some' evidence; nor even that it could be rebutted at all. Given the common definition of 'presume' as 'to suppose to be true without proof,' Webster's New Collegiate Dictionary 911 (1974), *and given the lack of qualifying instructions as to the legal effect of the presumption*, we cannot discount the possibility that the jury may have interpreted the instruction in either of two more stringent ways.

"First, a reasonable jury could well have interpreted the presumption as 'conclusive,' that is, not technically as a presumption at all, but rather as an irrebuttable direction by the court to find intent once convinced of the facts triggering the presumption. Alternatively, the jury may have interpreted the instruction as a direction to find intent upon proof of the defendant's voluntary actions (and their 'ordinary' consequences), unless *the defendant* proved the contrary by some quantum of proof which may well have been considerably greater than 'some' evidence–thus effectively shifting the burden of persuasion on the element of intent. Numerous federal and state

courts have warned that instructions of the type given here can be interpreted in just these ways. . . . And although the Montana Supreme Court held to the contrary in this case, Montana's own Rules of Evidence expressly state that the presumption at issue here may be overcome only 'by a preponderance of evidence contrary to the presumption.' Montana Rules of Evidence 301(b)(2). Such a requirement shifts not only the burden of production, but also the ultimate burden of persuasion on the issue of intent.

"We do not reject the possibility that some jurors may have interpreted the challenged instruction as permissive, or, if mandatory, as requiring only that the defendant come forward with 'some' evidence in rebuttal. However, the fact that a reasonable juror could have given the presumption conclusive or persuasion–shifting effect means that we cannot discount the possibility that Sandstrom's jurors actually did proceed upon one or the other of these latter interpretations. And that means that unless these kinds of presumptions are constitutional, the instruction cannot be adjudged valid. . . . It is the line of cases urged by petitioner, and exemplified by *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), that provides the appropriate mode of constitutional analysis for these kinds of presumptions.

### III

"In *Winship*, this Court stated:

" 'Lest there remain any doubt about the constitutional stature of the reasonable–doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt *of every fact* necessary to constitute the crime with which he is charged.' 397 U.S. at 364, 90 S.Ct. at 1073 (emphasis added).

"Accord, *Patterson v. New York*, 432 U.S., at 210, 97 S.Ct. at 2327. The petitioner here was charged with and convicted of deliberate homicide, committed purposely or knowingly, under 1947 Mont.Rev.Codes § 94–5–102(a) (Crim.Code of 1973). See

App. 3, 42. It is clear that under Montana law, whether the crime was committed purposely or knowingly is a fact necessary to constitute the crime of deliberate homicide. Indeed, it was the lone element of the offense at issue in Sandstrom's trial, as he confessed to causing the death of the victim, told the jury that knowledge and purpose were the only questions he was controverting, and introduced evidence solely on those points. App. 6–7. Moreover, it is conceded that proof of defendant's 'intent' would be sufficient to establish this element. Thus, the question before this Court is whether the challenged jury instruction had the effect of relieving the State of the burden of proof enunciated in *Winship* on the critical question of petitioner's state of mind. We conclude that under either of the two possible interpretations of the instruction set out above, precisely that effect would result, and that the instruction therefore represents constitutional error.

"We consider first the validity of a conclusive presumption. This Court has considered such a presumption on at least two prior occasions. In *Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), the defendant was charged with willful and knowing theft of government property. Although his attorney argued that for his client to be found guilty, ' "the taking must have been with felonious intent",' the trial judge ruled that ' "[t]hat is presumed by his own act." ' *Id.*, at 249, 72 S.Ct. at 243. After first concluding that intent was in fact an element of the crime charged, and after declaring that '[w]here intent of the accused is an ingredient of the crime charged, its existence is a . . . jury issue.' *Morissette* held:

" '*It follows that the trial court may not withdraw or prejudge the issue by instruction that the law raises a presumption of intent from an act.* It often is tempting to cast in terms of a "presumption" a conclusion which a court thinks probable from given facts. . . . [But] [w]e think presumptive intent has no place in this case. *A conclusive presumption which testimony could not overthrow*

*would effectively eliminate intent as an ingredient of the offense.* A presumption which would permit but not require the jury to assume intent from an isolated fact would prejudge a conclusion which the jury should reach of its own volition. A presumption which would permit the jury to make an assumption which all the evidence considered together does not logically establish would give to a proven fact an artificial and fictional effect. In either case, *this presumption would conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime.'"* 342 U.S., at 274–275, 72 S.Ct. at 255–256. (Emphasis added.)

"Just last Term, in *United States v. United States Gypsum,* 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978), we reaffirmed the holding of *Morissette.* In that case defendants, who were charged with criminal violations of the Sherman Act, challenged the following jury instruction:

" 'The law presumes that a person intends the necessary and natural consequences of his acts. Therefore, if the effect of the exchanges of pricing information was to raise, fix, maintain and stabilize prices, then the parties to them are presumed, as a matter of law, to have intended that result.' *Id.* at 430, 98 S.Ct. at 2869.

"After again determining that the offense included the element of intent, we held

" '[A] defendant's state of mind or *intent is an element of a criminal antitrust offense which . . . cannot be taken from the trier of fact through reliance on a legal presumption* of wrongful intent from proof of effect on prices. Cf. *Morissette v. United States . . . .*

.     .     .     .     .

" 'Although an effect on prices may well support an inference that the defendant had knowledge of the probability of such a consequence at the time he acted, the jury must remain free to consider additional evidence before accepting or rejecting the inference. . . . [U]ltimately the

decision on the issue of intent must be left to the trier of fact alone. The instruction given invaded this factfinding function.' 438 U.S., at 435, 446, 98 S.Ct. at 2872, 2878 (emphasis added).

"See also *Hickory v. United States,* 160 U.S. 408, 422, 16 S.Ct. 327, 332, 40 L.Ed. 474 (1896).

"As in *Morissette* and *United States Gypsum,* a conclusive presumption in this case would 'conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime,' and would 'invade [the] factfinding function' which in a criminal case the law assigns solely to the jury. . . .

"A presumption which, although not conclusive, had the effect of shifting the burden of persuasion to the defendant, would have suffered from similar infirmities. If Sandstrom's jury interpreted the presumption in that manner, it could have concluded that upon proof by the State of the slaying, and of additional facts not themselves establishing the element of intent, the burden was shifted to the defendant to prove that he lacked the requisite mental state. Such a presumption was found constitutionally deficient in *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). In *Mullaney* the charge was murder, which under Maine law required proof not only of intent but of malice. The trial court charged the jury that ' "malice aforethought is an essential and indispensable element of the crime of murder." ' *Id.,* at 686, 95 S.Ct. at 1883. However, it also instructed that if the prosecution established that the homicide was both intentional and unlawful, malice aforethought was to be implied unless the defendant proved by a fair preponderance of the evidence that he acted in the heat of passion on sudden provocation. *Mullaney v. Wilbur,* 421 U.S., at 686, 95 S.Ct. at 1883. As we recounted just two Terms ago in *Patterson v. New York,* '[t]his Court . . . unanimously agreed with the Court of Appeals that Wilbur's due process rights had been invaded by the presumption casting upon him the

burden of proving by a preponderance of the evidence that he had acted in the heat of passion upon sudden provocation.' 432 U.S., at 214, 97 S.Ct. at 2329. And *Patterson* reaffirmed that 'a State must prove every ingredient of an offense beyond a reasonable doubt, and ... may not shift the burden of proof to the defendant' by means of such a presumption. *Id.*, at 215, 97 S.Ct. at 2330." 99 S.Ct. at 2455–59 (footnotes omitted) (some emphasis added) (some citations omitted).

Nor would I hold any brief for the kind of argument which would indulge in the fantasy that the instruction brought under challenge was not misleading to the jury—such argument supposedly made on the promise that the instruction makes use of the word "inference" rather than "presumption"—for which reason, with everyone knowing that "inference" carries with it a lesser connotation than "presumption," the jury would inherently know that it was only a *permissible inference* upon which they were being instructed. There is no reason, and in fact no need, to attempt an elaborate discourse on the distinctions between presumptions,[2] which may be of law or of fact, and which may be conclusive or may be rebuttable, as against mere deducible inferences. As to the law of presumptions, one court has referred to it as a semanticist's nightmare. *State v. Pendry*, 227 S.E.2d 210 (W.Va.1976). That court, placing considerable reliance on *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), and *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), stated, as applicable here (as reinforced by *Barnes* and *Sandstrom*):

"Because of the confusion in the entire law of presumptions, particularly in their applicability to procedural and evidentiary problems in the field of criminal law, it may be better to utilize 'inferences' instead of 'presumptions' and to provide

that the jury may be permitted to infer a fact from a fact established beyond a reasonable doubt. However, the jury cannot be instructed that it either must accept the inference or that it may accept the inference unless rebutted by evidence introduced by the defendant. The jury must be free to reject any 'presumption' or 'inference' unless it believes it is established from all the evidence beyond a reasonable doubt. Such a rule imposes no obligation on a defendant to introduce any proof, and is not, therefore, constitutionally defective.

.   .   .   .   .

"Most of these difficulties which have emerged from the confusion of the law on presumptions would be overcome if we first fully appreciated Mr. Justice Frankfurter's observation that the law does not preclude States from utilizing common sense, and then firmly adhered to the propositions that, in a criminal case, a defendant is presumed to be innocent, that such presumption can be overcome only by proof of all material facts beyond a reasonable doubt, and that even inferences of material facts, before they can be accepted by a jury, must be established in the minds of the jury beyond a reasonable doubt." 227 S.E.2d at 222.

Being wholly unable to see any possible manner in which it could be held that the instruction to the mind of a reasonable juror could produce any other belief but that defendant's possession of the animal, if defendant could not explain the circumstance away—which the defendant was obliged to do—raised an inference of her guilt, which absent any other evidence was sufficient upon which to render a verdict of guilty, I touch briefly upon defendant's contention that the instruction is further faulty in leaving the jury to imply that the giving of the instruction assumes the unproven fact that the animal had been in fact stolen—one

---

2. In *County Court of Ulster v. Allen*, 442 U.S. 140, 99 S.Ct. 2213 (1979), the Court discoursed at length on the subject of accepting the reality that the words are used interchangeably: "The most common evidentiary device is the entirely permissive inference or presumption, which al-

lows—but does not require—the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and that places no burden of any kind on the defendant." *Id.* at 157, 99 S.Ct. at 2224.

of the essential elements of the crime with which she was charged.

To properly consider this facet of the case, it is perhaps easier to consider the type of case which this is not. Where the front window of the local jewelry store is smashed by an unidentified criminal, who escapes with the displayed jewels and silver, there is no problem in demonstrating to the jury that a burglary, and larceny, has in fact been committed. The corpus delicti is readily established. Where a pastured cow disappears from its owner's pasture "between the middle of October, 1974, and the end of February, 1975," which is the sum total of the involved owner's knowledge of the circumstances as to time and place, there certainly is not the ready proof of the corpus delicti, i. e., the fact of a larceny, that there is with an actually observed stealing, such as might be so had a witness seen a truck or pickup, sans lights, in the middle of the night stealthily drive into an owner's pasture and load out a horse or cow.

As is readily observable, the instruction placed the burden on the State to prove that "the animal found in defendant's possession was the same animal stolen in the larceny," but this assumes the most critical element of the crime, to—wit, that possession of the animal was ever feloniously taken in the first place. The jury should not be given such an instruction on being found in possession of stolen property unless the jury is clearly instructed that it first must have found that there was in fact proof that a larceny of the animal had taken place. The instruction as given was, as far as defendant's guilt or innocence was concerned, clearly a bootstrapping proposition which allowed the jury to believe that defendant's unsatisfactory explanation of her *possession of another's animal* was at the same time both proof that the animal must have been stolen, and proof that she stole it. The information against her charged that she did, within the time frame above set forth, "wilfully, knowingly, intentionally, feloniously, unlawfully, and without due cause or justification commit the crime of Grand Larceny in that the said defendant did steal, take, carry, lead, or drive away . . . one, brindle, heifer cow with horns and the property of Jeannine Martin." The only evidence whatever which in any way can be said to tend to establish that a larceny had in fact been committed was that of the boy, Brady Jones, to the effect that he had been told that defendant and another boy "had discovered a cow alongside Ford Creek Road and had loaded it onto Owens' pickup truck."

As even this Court's opinion notes, "The animal was reported as *lost* to local law enforcement agencies in early November." At this point an excerpt taken from the State's brief sheds light on the inadequacy of the case against defendant, and on the State's conception of Instruction No. 41:

"Instruction No. 41 does not explain the elements of the crime of larceny, but rather is an instruction on the Defendant's theory of the case. Apparently, Owens did possess and sell Martin's heifer. The State contended that Owens possessed the heifer because she stole it. Defendant offers an alternative explanation—Owens possessed the heifer because she accepted it as payment for pasturage. Once the State demonstrates larceny, the State only needs to connect Owens to the stolen cow to establish her guilt. Instruction No. 41 states that possession of the stolen goods is a sufficient connection. *Thus instruction no. 41 rightfully presumes that larceny occurred* because according to instruction no. 41, stolen possession incriminates only if a larceny occurred."

This analysis is entirely sound, and should not be lightly disregarded. Any instruction which, by the State's own admission, tells a jury (while it deliberates on the sufficiency of a defendant's explanation as to how she came to have possession of another's cow) that it can "presume" a larceny has occurred, where there is no legitimate proof that a larceny ever took place, should receive the closest scrutiny, and quickly be held to be reversible error.

A page later in the State's brief, so that there may be no doubt that the above passage was not a mere inadvertency, the State saying that Instruction No. 41 resembles the instruction given in *State v. Bogris*, 26 Idaho 587, 144 P. 789 (1914), goes on to say: "*Both presume the property was stolen* and both instruct that the defendant's possession of the property prima facie establish the defendant's guilt." (Emphasis added.) Running squarely into *Mullaney, Barnes* and *Sandstrom*, the next sentence concedes that such "prima facie guilt can be rebutted if the defendant offers an alternative explanation."

In a following paragraph the State continued its analysis of that which the jury here was being told by the challenged instruction:

"Instruction no. 41 *presumes a larceny occurred* and instructs that the State's prima facie case is complete if Owens cannot explain her possession of the cow stolen in the larceny. Instruction no. 41 further states the jury's duty is to decide if the defendant's explanation rebuts the State's prima facie case."

There is more in the same vein—all of which should make it abundantly clear to the court that the State itself on the appeal places the same reading upon the instruction which does the defendant herself.

The case relied upon by the State, *State v. Bogris, supra*, is demonstrative of the reasons for *not* giving the instruction in question. *Bogris*, in factual pattern is similar to *Barnes*; in both cases there was no question of establishing the corpus delicti, that a larceny had in fact taken place. In both instances property stolen consisted of checks which were later cashed by the respective defendants. In *Bogris* two suitcases were taken from a railroad section house, and later found at a nearby bake–house, both suitcases having been cut open, and three company paychecks taken. That there had been a larceny was not open to question. Testimony tended to establish that Bogris cashed the checks six weeks later in Missoula, Montana, forging the name of the payee. The instruction given by the trial court was that possession of stolen property was a circumstance tending to show guilt.[3]

On appeal it was held that the instruction was supported by *State v. Sanford, supra*, "the rule of law that possession of recently stolen property is a circumstance from which, when unexplained, the guilt of the accused may be inferred." 8 Idaho at 188, 67 P. at 493. The *Bogris* case is wholly compatible with the early Idaho cases holding that possession of stolen property is a circumstance from which guilt *may* be inferred, and the case is not authority giving license to a trial court to instruct the jury that such possession outright raises a presumption of guilt, hence a prima facie case, and at the same time telling the jury that it may presume that a larceny has in fact taken place in the first instance.

As to the evidence before the jury which the State declares was sufficient to support an instruction allowing the jury to assume that a felonious taking had occurred, there was the above–mentioned testimony of the boy, Brady Jones. At the trial of Mrs. Owens on a charge that she had stolen a brindle heifer cow with horns, the boy's testimony was, not that anyone had stolen such a cow, or that any cow had been stolen, but that he had been *told* of the appropriation of a *black* cow, which conversation supposedly took place when he had

---

3. " 'You are further instructed that if you believe from the evidence beyond a reasonable doubt that the property described in the information was stolen and that the defendant was found in the possession of the property after it was stolen, then such possession is, in law, a strong, incriminating circumstance tending to show the guilt of the defendant unless the evidence and the facts and circumstances thereunder show that he may have come honestly in possession of the same.

" 'In this connection, I further instruct you that if you find from the evidence beyond a reasonable doubt that the property described in the information was found in the possession of the defendant, then in determining whether or not the defendant is guilty you should take into consideration all of the circumstances attending such possession.' " 26 Idaho at 601, 144 P. at 793.

worked for her in the summer of 1975. The testimony which is said to have established a stealing of the brindle heifer in question is as follows:

(By Prosecuting Attorney)

"Q . . . During that time you worked for Mrs. Owens, did you ever have occasion to have a conversation with her regarding a heifer cow?

"A Yes, I did.

. . . . .

"Q Who was present?

"A Richard Pederson and Mrs. Owens and myself.

. . . . .

"Q Now, as near as you can recall, would you tell the jury what was said regarding this heifer? Just if you would in your own words repeat that to the jury?

"A It was Rick says to Dianne or something like this, can we trust him? And I think Mrs. Owens said yeah, I think we can trust him enough now and one of them started saying—I think it was Mrs. Owens said that they had picked up a black—

. . . . .

"A She said that her and Rick were driving up Ford's Creek and there's a black cow walking along side the road.

. . . . .

"A Well, they said that they stopped the truck and they backed it up to the bank and they got out and put a rope around this cow's neck and they led it right up into the back of the pickup and I said didn't it give you any trouble or anything like that and they said no, it was really tame and they said that they took it up to Weippe, up to Hueths and that it was going to have a calf and Dianne would get the calf out of it if they took care of it.

"Q Was anything said concerning where the animal was taken from?

"MR. RAPAICH: Object to the question as leading.

"THE COURT: Overruled.

"Q You may answer that.

"A I forgot the question.

"Q Was anything said concerning where the animal was taken from?

"A It was taken off the road and that's all I know.

"Q Mr. Jones, are you at this time on good terms with Mrs. Owens?

"A No, I'm not.

"Q Have you, Mr. Jones, testified under oath on previous occasions?

"A Yes, I have.

"Q Have you always told the truth?

"A No, I haven't.

"Q Are you telling the truth now?

"A Yes. I am."

The boy, Brady Jones, was not the only State's witness who admitted to perjury. Margaret "Tony" Hepburn, who along with Jones had been a defense witness at the preliminary hearing, was not called by defense at trial, but by the State after defendant placed in evidence a bill of sale, dated August 25, 1974, to one mixed breed heifer, identified as red brindle, white faced, and horned. On examination by the prosecutor was brought forth the statement that the document, bearing her signature, was false, and that she had not given the animal described to defendant in payment on the August pasture bill. Nonetheless, following the preliminary hearing, at which she testified to giving the animal on the pasture bill, she gave at least five additional statements touching upon the description of the animal identified on the bill of sale. On direct examination, after declaring that the bill of sale was spurious, her only explanation was that defendant "told me she had raised the heifer and that the police in Clearwater County harassed her so bad and the people where she lived harassed her so bad and she'd sold it and she'd just feel better if she had a bill of sale." On cross—examination the witness admitted that she had testified at the preliminary hearing, that she had known that she was under oath, and testified that her other testimony was not truthfully given.

An appellate court, of course, does not sit to pass judgment upon credibility, and it was for the jury to determine, as best it could, whether the two witnesses were lying when they testified at trial that they had been lying when they earlier testified under oath. An appellate court does have to be concerned, however, with the very integrity of the factfinding process, where the jury was instructed, as was this jury that: "Witnesses are presumed to speak the truth, and you should endeavor to reconcile the testimony with the presumption that each witness intended to speak truthfully."

Admittedly, this instruction was not singled out for objection by defense counsel at the instructions conference which immediately preceded instructing the jury and final summations. Be that as it may, the same principles of law which should compel the Court to entertain and determine the *Sandstrom* principle are equally applicable here. Perhaps even more so. What a miscarriage of justice for a court to direct a jury to indulge in the presumption that two witnesses, who *may be* truthfully testifying that they previously lied under oath, are presumed to be speaking truthfully!

The defendant in this case has been convicted of a felony solely as a result of the trial court telling the jury that it could *assume* a larceny had in fact been committed, of telling the jury that defendant's possession of the animal assumed to have been stolen raised an inference of her guilt and was in and of itself sufficient to justify a guilty verdict, of telling the jury that the defendant was presumed to intend the natural and probable consequences of her acts, and of telling the jury that two admitted perjurers were *presumed* to be speaking truthfully in their testimony against her. Defendant's constitutional presumption of innocence could hardly survive against an assumption of an essential element of the crime charged, two mandatory presumptions, and the court's instructive comment that two of the State's perjurious witnesses were presumed to speak the truth. The defendant did not receive the fair trial to which all are constitutionally entitled, but far worse, she has not been given full and fair consideration on her appeal, where time is not the element which it is at trial. The trial court, of course, had no second opportunity to reflect upon any of the constitutionally bad instructions other than the one telling the jury that the possession of the animal raised an inference of defendant's guilt, sufficiently so as to convict her. Ironically, as I have been at great pains to demonstrate, this Court in *Trowbridge* excised the unconstitutional instruction. The guilt evidence in this case falls short of that in *State v. Erwin, supra*, where the conviction was reversed. Without doubt the jury's verdict flowed only from applying the faulty instructions.