# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 43769

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2016 Unpublished Opinion No. 816 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: December 13, 2016 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| JOHN MCEVOY, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. D. Duff McKee, District Judge. Hon. F. Randall Kline, Magistrate.

Order of the district court on intermediate appeal from the magistrate judgment of conviction, affirmed.

Tri-City Legal, PLLC; Eric J. Scott, Richland, Washington, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

---

HUSKEY, Judge

John McEvoy appeals from the district court's order affirming convictions for two misdemeanor violations of county ordinances. McEvoy raises the following issues on appeal: (1) the State's amended complaint was invalid because no oath was administered and the uniform citation was invalid; (2) the district court erred by affirming the magistrate's denial of McEvoy's motion to withdraw his guilty plea; (3) the magistrate possessed a preformed opinion of McEvoy's property, resulting in a structural defect in the proceedings; and (4) the magistrate abused its discretion in imposing the sentence.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

The State charged McEvoy with violating two county ordinances; causing a public nuisance and failing to obtain a required building permit. The original charges were issued as

misdemeanor offenses within an Idaho Uniform Citation. At a pretrial conference, McEvoy requested the State issue a formal complaint in addition to the original citation.

The State filed an amended complaint which listed the following violations: Count I for failing to obtain a building permit, in violation of Idaho Code § CO 06-01-09; and Count II for maintaining and/or allowing a public nuisance on his property, in violation of I.C. § CO 02-01-05. McEvoy filed a motion to dismiss, arguing the State's complaint failed to recite any facts in support of the alleged code violations. In response, the State requested and the magistrate granted a motion to amend the complaint. In the amended complaint, Count I alleged a building permit violation of Canyon County Ordinance § 06-01-09 and Count II alleged a public nuisance violation of Canyon County Ordinance §§ 02-01-07 and 02-01-05. McEvoy filed a renewed motion to dismiss which argued the public nuisance violation (Count II) lacked support and application. McEvoy also filed a memorandum regarding "vindictive prosecution." The magistrate denied McEvoy's motion to dismiss, after which McEvoy entered a written guilty plea.

After the magistrate accepted the guilty plea, the State filed a motion to allow both the State and the magistrate to visit McEvoy's property prior to sentencing so the magistrate could view the property firsthand to better understand the extent of the nuisance, and because "an inspection of the land at issue would serve the interest of judicial economy." McEvoy objected to the presentence review, arguing it lacked proper grounds and support. McEvoy filed a motion to withdraw his guilty plea arguing he had been unaware that as a result of his guilty plea, he must allow others to roam his property without his consent. The magistrate granted the State's motion to review McEvoy's property. At the hearing, the magistrate explained his position as follows:

> And the Court has broad latitude in making determinations with regard to the appropriate sentence. The Court is going to grant the State's motion. We're not going to have a bunch of people traipsing around. We're going to have the prosecutor, defense counsel and Mr. McEvoy if he chooses to be there present.
>
> We will take a walk through the property. We'll take a look at it and see exactly what we're dealing with. And at that point, it will give--we have a couple options. Either the State will present a slide show program and then we'll get a one dimensional view of it or we can go out and get a three dimensional view and go take a look at it. We're going to go take a look at it and we'll make a determination at that point.
>
> Quite candidly, it's as much for benefit of your client as it is for the State.

2

Subsequently, the magistrate denied McEvoy's motion to withdraw his guilty plea. The magistrate, the prosecutor, McEvoy, and his counsel walked through McEvoy's property prior to sentencing. Afterwards, the magistrate entered judgment and imposed the following sentence: On each count, a $1,000 fine with $800 suspended, and 180 days in jail "reserved" with the jail sentences to run consecutively. The magistrate also explained: "That jail is going to be reserved and we're going to set this case on a 90-day calendar. And that calendar's going to be on a 90-day review and this court directs that you diligently work towards compliance with the law."

McEvoy filed a timely notice of appeal to the district court. The district court affirmed the magistrate's rulings on all motions and the judgment of conviction as entered. However, the district court ordered the case be remanded to the magistrate for resentencing because the magistrate's definition of "reserved" was unclear and ambiguous, and the magistrate had erroneously rejected McEvoy's refusal to be put on probation. McEvoy timely appeals.

## II.

## STANDARD OF REVIEW

For an appeal from the district court, sitting in its appellate capacity over a case from the magistrate division, this Court's standard of review is the same as expressed by the Idaho Supreme Court. The Supreme Court reviews the magistrate record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. *Pelayo v. Pelayo*, 154 Idaho 855, 858-59, 303 P.3d 214, 217-18 (2013). If those findings are so supported and the conclusions follow therefrom, and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure. *Id*. Thus, the appellate courts do not review the decision of the magistrate. *Bailey v. Bailey*, 153 Idaho 526, 529, 284 P.3d 970, 973 (2012). Rather, we are procedurally bound to affirm or reverse the decision of the district court. *Id*.

## III.

## ANALYSIS

A. **The Amended Complaint Was Not Invalid**

1. **The amended complaint was not invalid even though the complaint was filed without an oral oath**

McEvoy argues the amended complaint was invalid because a complaint must be administered with an oath or based upon a sworn affidavit, and the State failed to accomplish either requirement. Idaho Criminal Rule 3 controls this procedural requirement, and states:

3

The complaint is a written statement of the essential facts constituting the offense charged. It shall be made upon oath before a magistrate; provided, a prosecuting attorney may, without oath or affirmation, sign a complaint before a magistrate based upon the sworn affidavit, which includes a written certification or declaration under penalty of perjury of a complainant, which shall be filed with the court. Except as otherwise provided by law or rule, all criminal proceedings shall be initiated by complaint or indictment and prosecuted thereafter by complaint, indictment or information as hereinafter provided by these rules.

McEvoy asserts the amended complaint was invalid because Idaho Criminal Rule 3 requires the State to either make a complaint under oath or sign a complaint that is based on a sworn affidavit. In arguing the State failed in both regards, McEvoy presents a two-pronged argument against the complaint's validity. We will address only the first at length.

McEvoy argues the magistrate did not administer an oral oath when the State filed and signed its amended complaint. The magistrate addressed the amended complaint on the record:

COURT: So, Mr. VanSwearingen, you filed the complaint?

MR. VANSWEARINGEN: I have the Amended Complaint for the Court's--for the Court right here if you'll just allow me to sign it. If I may approach.

COURT: Yes, sir.

MR. VANSWEARINGEN: And Judge, just in setting the new trial date, Mr. McEvoy's [sic] has expressed a willingness to waive his right to a jury trial and he'd be happy to proceed on the court trial.

COURT: Any objection from the State or do you want a jury trial?

MR. VANSWEARINGEN: No objection, Your Honor.

COURT: We'll keep the date. The Court has executed the Amended Criminal Complaint in this matter.

The issue is not--as the State argues--McEvoy's constitutional right, but rather the procedure in which a criminal complaint is properly made. We agree with McEvoy that no oral oath was offered by the magistrate at the exact moment the amended complaint was executed. However, to invalidate the complaint for this reason would be too narrow a reading of I.C.R. 3. The complaint contains the facts and the charge at issue in the case. The criminal rule requires accuracy in the complaint, which results in protection and predictability for the defendant. Requiring an oath helps support this goal of accuracy since it subjects the complainant to the penalty of perjury. *See* 60A AM. JUR. 2D *Perjury* § 12 (2016).

Here, the amended complaint satisfies the requirements set forth in I.C.R. 3. There is evidence the prosecuting attorney properly subjected himself to the penalty of perjury. No oath

4

was administered at the moment the magistrate received the complaint. However, in two locations, the amended complaint indicates the State's representative had been sworn on the date the complaint was signed. The complaint reads:

> PERSONALLY APPEARED Before me this 30th day of December, 2014, Joshua Van Swearingen of the Canyon County Prosecuting Attorney's Office, who being duly sworn, complains and says:
>
> . . . .
>
> SUBSCRIBED AND SWORN To before me this 30 day of December, 2014.

The evidence of being sworn demonstrates McEvoy received procedural protections in this case. The signature by the complainant demonstrates his being duly sworn and the signature by the magistrate indicates the complainant signed and was sworn in the presence of the magistrate.

The Idaho Supreme Court addressed the same issue in *State v. Parker*, 81 Idaho 51, 336 P.2d 318 (1959). In *Parker*, the Court addressed the validity of a complaint when there was no evidence the complaint was filed under oath or with an affidavit. *Id.* at 54, 336 P.2d at 320. There, the deputy explained the facts to the justice of the peace who prepared the complaint and handed it to the deputy. The deputy signed the complaint and returned it to the justice of the peace who then executed the complaint. *Id.* In the process, the deputy remained in the presence of the justice of the peace, but there was no oath administered, the deputy never raised his hand, and the deputy never spoke to the truth of the statements in the complaint. *Id.* However, the complaint recited the deputy had personally appeared and stated: "who, being duly sworn, complains and says." *Id.* Additionally, the complaint concluded with the statement: "Subscribed and sworn to before me this 20th day of April, 1957." *Id.* The Supreme Court held the procedure was enough to satisfy the oath requirement, since the statute does not require a particular form of action. *Id.* at 55, 336 P.2d at 321. The Court based its decision on a Kansas Supreme Court case, *State v. Anderson*, 285 P.2d 1073 (Kan. 1955), which reasoned not only that strict oath formalities are not always complied with, but in the absence of such oath, "some weight must be given to opening statements of the complaint and to the physical acts of the parties." *Parker*, 81 Idaho at 55, 336 P.2d at 321 (quoting *Anderson*, 285 P.2d at 1078). Here, as in *Parker* and *Anderson*, the record does not contain evidence of an oral oath prior to signing the complaint. However, like in *Parker* and *Anderson*, the complaint was presented in front of a judge, signed in front of that judge, and contained introductory and conclusory language detailing the complainant being sworn. Since the Idaho Supreme Court indicates there are not

5

strict formalities required for an oath, and the actions of the parties demonstrated intent to be sworn under oath, the amended complaint satisfied I.C.R. 3. Furthermore, since the amended complaint satisfied I.C.R. 3, we do not need to address whether, in the alternative, the complaint was based on an affidavit.

### 2. The uniform citation was valid

McEvoy contends the uniform citation was invalid because it listed an incorrect date. McEvoy asserts that as a result of the invalid citation, the magistrate did not have jurisdiction. We disagree since a date is not a material element of the offense and, therefore, does not impact the subject matter jurisdiction of the trial court.

McEvoy argues on appeal the State had submitted a defective document since the misdemeanor rules require identification of the date of the offense. Although the misdemeanor rules contain such a requirement, these rules do not apply in this case because the citation included the date of the offense. The citation stated the violations occurred on December 11, 2013, at 13:00. From the information in the remainder of the citation, it is clear this "2013" was incorrect, as the defendant was summoned to appear "on or after January 16th, 2013, and on or before January 29th, 2013," and the citation was filed January 10, 2013. The violation date was nevertheless listed in the document, even if it was not accurate.

The issue then is not whether the citation included a date, but rather, whether the erroneous date was enough to entirely invalidate the document. It was not, since case law indicates a date is not essential and can be mistaken in the charging documents. In *State v. Rogers*, 48 Idaho 567, 283 P. 44 (1929), the information stated the crime of rape occurred on December 22. *Id.* at 570, 283 P. at 44. The prosecutor presented its case based on December 22, yet the defense explained in its case that the crime could have occurred on a different date. *Id*. The Court ruled:

> That the requested instruction was wrong, and the court's instruction right, admits of no controversy. Time is not of the essence of rape; and, notwithstanding the date alleged in the information, any proof that the actual crime charged was committed within three years prior to the filing of the information was admissible.

*Id.* at 570-71, 283 P. at 44-45.

In another instance, in *State v. Owens*, 101 Idaho 632, 619 P.2d 787 (1979), the defendant argued the information filed against her in the district court should have been dismissed because the information failed to properly describe the stolen property and did not contain the date of the

alleged larceny. *Id.* at 637, 619 P.2d at 792. The Idaho Supreme Court held the date was not required because time was not a material element of the charge and the exact date was unlikely to be discovered without admission by the guilty party. *Id.* The Court explained, "The information filed against Owens in this case was adequate with respect to the time the crime charged was alleged to have occurred." *Id.* The ruling, therefore, indicates a date is not material since a filing can be adequate even when it lacks a date or time. Here, the date of the citation is not an essential element of McEvoy's building permit violation or public nuisance violation. Like in *Rogers* and *Owens*, time is not of the essence in misdemeanor crimes involving property. The incorrect date within the citation does not render it invalid since the date was not a material element in the charge.

In further support of the citation's validity, Idaho Criminal Rules do not require dismissal of an indictment based solely on errors, and they allow for the alteration of incorrect dates throughout the trial process. Idaho Criminal Rule 7(b) states: "Error in the citation or its omission shall not be grounds for dismissal of the indictment or information or for reversal of the conviction if the error or omission did not mislead the defendant to the defendant's prejudice." Furthermore, the date listed on a citation or complaint may be amended throughout the proceedings. "The court may permit a complaint, an information or indictment to be amended at any time before the prosecution rests if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." I.C.R. 7(e). Aligning with this reasoning, Idaho Criminal Rules also address the possibility of clerical mistakes and how such errors may be corrected as well. "Clerical mistakes in judgments, orders or other parts of the record and errors in the record arising from oversight or omission may be corrected by the court at any time and after such notice, if any, as the court orders." I.C.R. 36. The Idaho Criminal Rules, therefore, reveal that while errors may occur during trial, these errors do not automatically invalidate the indictment or information, and procedures exist to allow for amendments. Thus, an incorrect year in McEvoy's citation is insufficient to invalidate the document.

Finally, because the date is not material, it does not confer or take away subject matter jurisdiction. McEvoy's argument proceeds as follows: (1) Misdemeanor Criminal Rule 5 requires the date of the offense be listed in a charging document; (2) an indictment confers jurisdiction; and (3) without a proper indictment, a court has no jurisdiction. But because McEvoy's citation possessed an impossible date, the citation was in an improper form and,

7

therefore, the trial court had no jurisdiction over the matter. Although apparently logical in its progression, McEvoy's position fails to address the Idaho Supreme Court precedent regarding subject matter jurisdiction in Idaho courts.

Whether a court lacks jurisdiction is a question of law, over which this Court exercises free review. *State v. Jones*, 140 Idaho 755, 757, 101 P.3d 699, 701 (2004). In a criminal case, the filing of an information alleging that an offense was committed within the State of Idaho confers subject matter jurisdiction. *Id.* at 757-58, 101 P.3d at 701-02. Because the information provides subject matter jurisdiction to the court, the court's jurisdictional power depends on the charging document being legally sufficient to survive challenge. *Id.* at 758, 101 P.3d at 702. Whether a charging document conforms to the requirements of law and is legally sufficient is also a question of law subject to free review. *Id.*

A challenge asserting the charging information is jurisdictionally deficient is never waived and may be raised at any time, including for the first time on appeal. *Id.* If an alleged deficiency is raised by a defendant before trial or entry of a guilty plea, the charging document must be found to set forth all facts essential to establish the charged offense to survive the challenge. *State v. Halbesleben*, 139 Idaho 165, 168, 75 P.3d 219, 222 (Ct. App. 2003). When the information's jurisdictional sufficiency is challenged after trial, it will be upheld unless it is so defective that it does not, by any fair or reasonable construction, charge the offense for which the defendant was convicted. *Jones*, 140 Idaho at 759, 101 P.3d at 703; *State v. Robran*, 119 Idaho 285, 287, 805 P.2d 491, 493 (Ct. App. 1991). A reviewing court has considerable leeway to imply the necessary allegations from the language of the information. *Jones*, 140 Idaho at 759, 101 P.3d at 703; *Robran*, 119 Idaho at 287, 805 P.2d at 493. In short, when considering a post-trial challenge to the jurisdictional sufficiency of the information, a reviewing court need only determine that, at a minimum, the information contains a statement of the territorial jurisdiction of the court below and a citation to the applicable section of the Idaho Code. *State v. Quintero*, 141 Idaho 619, 622, 115 P.3d 710, 713 (2005).

Here, the magistrate had subject matter jurisdiction because the complaint alleged McEvoy's offense was committed in Idaho. The original misdemeanor citation stated McEvoy had committed a building permit violation and a public nuisance violation at 1703 North KCID Road, Caldwell, Idaho. The two alleged violations occurred in Canyon County, Idaho. The amended complaint also alleged Count I, which violated the Canyon County Ordinance § 06-01-

8

09, and Count II, which violated §§ 02-01-07 and 02-01-05, were "against the power, peace and dignity of the State of Idaho." The citation and complaint clearly alleged that McEvoy's county ordinance violations occurred in Idaho and thus, the magistrate had subject matter jurisdiction.

**B.      The District Court Properly Affirmed the Magistrate's Denial of McEvoy's Motion to Withdraw His Guilty Plea**

After entering a written guilty plea, McEvoy objected to any search of his property and filed a motion to withdraw the plea. The magistrate denied the motion to withdraw, and the district court affirmed the magistrate's ruling on appeal. Here, McEvoy asserts the district court erred when it affirmed the magistrate's denial of McEvoy's motion to withdraw his guilty plea. We disagree.

Whether to grant a motion to withdraw a guilty plea lies in the discretion of the trial court, and such discretion should be liberally applied. *State v. Freeman*, 110 Idaho 117, 121, 714 P.2d 86, 90 (Ct. App. 1986). Appellate review of the denial of a motion to withdraw a plea is limited to determining whether the district court exercised sound judicial discretion as distinguished from arbitrary action. *Id.* Also of importance is whether the motion to withdraw a plea is made before or after sentence is imposed. Idaho Criminal Rule 33(c) provides that a plea may be withdrawn after sentencing only to correct manifest injustice. The stricter standard after sentencing is justified to ensure that the accused is not encouraged to plead guilty to test the weight of potential punishment and withdraw the plea if the sentence were unexpectedly severe. *Freeman*, 110 Idaho at 121, 714 P.2d at 94. Accordingly, in cases involving a motion to withdraw a plea after sentencing, appellate review is limited to reviewing the record and determining whether the trial court abused its sound discretion in determining that no manifest injustice would occur if the defendant was prohibited from withdrawing his or her plea. *State v. Lavy*, 121 Idaho 842, 844, 828 P.2d 871, 873 (1992).

Here, there is no evidence to indicate McEvoy did not initially enter a knowing, intelligent, and voluntary guilty plea. The written plea of guilty, prepared by McEvoy for the magistrate, contains McEvoy's initials and signature. McEvoy's initials appear next to the following admission: "I have been fully informed of the charges against me and the possible consequences for entry of the plea." McEvoy added his own explanation, stating:

> [b]y which I mean I have been informed that I am charged with public nuisance (CCO § 6-1-9) [sic] and failure to obtain a permit (CCO § 6-1-9) and that the potential penalties may run consecutively and may include a 6 month jail sentence and a $1,000 fine on each charge.

9

McEvoy also signed his initials next to the following admission: "I am entering this plea of guilty freely, knowingly, voluntarily and intelligently. I am not under the influence of alcohol, illegal drugs, or medications. I do not have any medical or mental issues which make it hard for me to understand the proceedings." McEvoy and his counsel signed and dated the end of the written plea of guilty, which was subsequently filed by the magistrate. This information is sufficient evidence that McEvoy entered his guilty plea knowingly, intelligently, and voluntarily.

The first issue here is whether the magistrate properly considered the evidence when it denied McEvoy's motion to withdraw his plea. It did. During the hearing for McEvoy's motion to withdraw his guilty plea, the magistrate acknowledged the proper standard of review, articulating it could consider the motion in the interest of justice and could consider the motion more liberally if it was made prior to sentencing. Using this standard, the magistrate explained McEvoy received representation at all stages of the trial and also completed a written guilty plea. The magistrate concluded the consequences of the guilty plea were explained to McEvoy and therefore, denied McEvoy's motion to withdraw. The magistrate had sufficient basis to support its decision, and the district court therefore, was correct in its decision to affirm on these grounds. However, this does not end the inquiry.

McEvoy also offers an alternative interpretation of the knowing, intelligent, and voluntary requirement of a guilty plea. McEvoy argues that we must consider whether the plea implicated a constitutional right and, if so, whether a waiver of that constitutional right was a collateral consequence or a direct consequence of the guilty plea. McEvoy argues if the waiver was a direct consequence, then the waiver was not knowing, voluntary, or intelligent.

A guilty plea will only be upheld if the entire record demonstrates that the waiver was made voluntarily, knowingly, and intelligently. *State v. Colyer*, 98 Idaho 32, 34, 557 P.2d 626, 628 (1976). There is a prima facie showing that a plea was entered into knowingly and voluntarily when the minimum requirements of I.C.R. 11 are met. *Ray v. State*, 133 Idaho 96, 99, 982 P.2d 931, 934 (1999) (overruled on other grounds). Idaho Criminal Rule 11(c)(2) states that when a defendant in Idaho enters a guilty plea, "the record of the entire proceedings, including reasonable inferences therefrom, must show . . . [t]he defendant was informed of the consequences of the plea, including minimum and maximum punishments, and other direct consequences which may apply." The trial court is not required to inform a defendant of

10

consequences that are collateral or indirect. *State v. Huffman*, 137 Idaho 886, 887, 55 P.3d 879, 880 (Ct. App. 2002).

Here, we do not need to address whether McEvoy's guilty plea required a waiver of his Fourth Amendment rights and whether such a waiver was a direct or collateral consequence, since the order granting a presentence review of McEvoy's property did not arise as a direct result of McEvoy's guilty plea. Idaho courts consider the question of "other direct consequences" from I.C.R. 11(c)(2) only when the guilty plea results in immediate consequences. In *State v. Heredia*, 144 Idaho 95, 156 P.3d 1193 (2006), Heredia pleaded guilty to vehicular manslaughter, which subjects individuals by statute to a possible punishment of paying child support to the victim's children. *Id.* at 97, 156 P.3d at 1195. Before his guilty plea, Heredia was not informed of this potential punishment listed in the Idaho Code. *Id.* This connection between the crime and the punishment allowed Heredia to challenge the validity of his guilty plea on appeal. *Id.*

Similarly, in *State v. Shook*, 144 Idaho 858, 172 P.3d 1133 (Ct. App. 2007), the defendant pleaded guilty to aggravated battery while he was already incarcerated. *Id.* at 859, 172 P.3d at 1134. The district court ordered Shook to pay restitution for the crime and serve a sentence consecutive to his current sentence. *Id.* This Court analyzed the result of the guilty plea since the defendant's punishments were at issue and a consequence of the crime committed. *Id.* at 860-61, 172 P.3d. at 1135-36. Additionally, the Idaho Supreme Court has analyzed direct and collateral consequences when parties argue they were not informed the Idaho Code would require them to register as sex-offenders after they pled guilty. *See e.g., State v. Flowers*, 150 Idaho 568, 572, 249 P.3d 367, 371 (2011). The Court has also considered these consequences when a defendant argued he was not informed of persistent violator status if he committed a felony in the future. *See Carter v. State*, 116 Idaho 468, 776 P.2d 830 (Ct. App. 1989).

McEvoy argues he was not informed prior to his guilty plea that he may be ordered to allow others on his property, and he claims he would not have pleaded guilty had he known of this possible consequence. However, the order for presentence review of McEvoy's property resulted from an unrelated motion filed by the State pursuant to Idaho Rules of Evidence 401 and 403. In its motion for presentence review, the State argued the inspection would "serve the interest of judicial economy," and the district court granted the motion without any mention of the guilty plea. Unlike Idaho cases addressing direct and collateral consequences, McEvoy's

11

alleged constitutional violation did not arise as an immediate result of the guilty plea, but rather, from a separate and distinct motion by the State. In other words, the search of McEvoy's property did not follow directly from the crime or violation within the plea, since violating the public nuisance and building permit code did not automatically subject McEvoy to a search under Idaho Code. Because the presentence review resulted from a distinct motion, and not from the violations to which McEvoy pleaded, the property search was not a consequence of McEvoy's guilty plea.

**C.      The Magistrate May Have Possessed a Preformed Opinion About the Property, but This Is Not Enough to Reverse the District Court's Decision**

McEvoy argues the magistrate exhibited actual prejudgment about the case which required the magistrate's recusal under the Due Process Clause of the Fourteenth Amendment. McEvoy asserts the magistrate stated he had witnessed the results of the crime, revealed his observations at trial, and failed to demonstrate how his opinion constituted only a casual observation. The State responds the record shows no bias, the magistrate found no bias, and McEvoy failed to show an abuse of discretion in the magistrate's finding. Any evidence of a preformed opinion was not substantial enough in this case to warrant a reversal under the Due Process Clause of the Constitution.

Here, McEvoy did not file a motion or distinctly argue for disqualification of the magistrate pursuant to Idaho Criminal Rule 25. Instead, on appeal McEvoy argues only for the magistrate's recusal under the Due Process Clause. Because of McEvoy's position, we consider only the constitutional issue in this case.

Although due process can require judicial disqualification, the cases involve "extreme facts that created an unconstitutional probability of bias." *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 887 (2009). The United States Supreme Court in *Caperton* identified three instances which require recusal under the Due Process Clause of the Constitution. *Id.* at 877-87. These circumstances include: (1) instances where the judge has a financial interest in the outcome of the case (*Id.* at 877-79); (2) the situation where a judge charges a defendant with criminal contempt and then proceeds to try him on the charge (*Id.* at 880-81); and (3) cases where a person with a personal stake in a particular case had a significant and disproportionate influence in placing the judge on the case (*Id.* at 884-86). According to the Court, "Personal bias or prejudice 'alone would not be sufficient basis for imposing a constitutional requirement under

the Due Process Clause.'" *Caperton* at 877 (quoting *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 820 (1986)).

In this case, none of the three circumstances are present--the magistrate did not have a financial interest in the case, the magistrate did not charge McEvoy with criminal contempt, and a person with a personal stake in the case did not influence the magistrate's assignment to the case. Without any of these circumstances, the magistrate was not required to recuse himself under the Due Process Clause. We recognize the magistrate's comments may appear to demonstrate bias,[1] yet the statements do not give rise to a due process violation.

## D. Because the District Court Has Remanded the Case to the Magistrate, McEvoy's Sentencing Claim is Moot

McEvoy argues the magistrate erred when it imposed his sentences. The State responds the issue was properly and sufficiently addressed by the district court and therefore, McEvoy's argument is moot. Here, because the district court already ruled in favor of McEvoy and ordered the sentencing issue to be remanded to the magistrate, McEvoy's claim of error is moot.

A case becomes moot when the issues presented are no longer live or the defendant lacks a legally cognizable interest in the outcome. *Murphy v. Hunt*, 455 U.S. 478, 481 (1982);

---

[1]     The Idaho Code of Judicial Conduct sets forth the following: "A judge shall not investigate facts in a matter independently, and shall consider only the evidence presented and any facts that may properly be judicially noticed." I.C.J.C. Rule 2.9(D). It is troubling to find the magistrate granted a motion for presentence review of McEvoy's property and despite McEvoy's objection, went roaming around McEvoy's property "to determine the extent" of the misdemeanor violations and to gather information to be used in sentencing. At the hearing, the magistrate explained his position as follows:

> And the Court has broad latitude in making determinations with regard to the appropriate sentence. The Court is going to grant the State's motion. We're not going to have a bunch of people traipsing around. We're going to have the prosecutor, defense counsel and Mr. McEvoy if he chooses to be there present.
> We will take a walk through the property. We'll take a look at it and see exactly what we're dealing with. And at that point, it will give--we have a couple option. Either the State will present a slideshow program and then we'll get a one dimensional view of it or we can go out and get a three dimensional view and go take a look at it. We're going to go take a look at it and we'll make a determination at that point.
> Quite candidly, it's as much for benefit of your client as it is for the State.

This unorthodox method of searching the property to gather information for sentencing purposes resembles an independent investigation, which suggests a lack of neutrality and detachment on the part of the court. We therefore advise against this procedure in the future.

13

*Bradshaw v. State*, 120 Idaho 429, 432, 816 P.2d 986, 989 (1991). Even where a question is moot, there are three exceptions to the mootness doctrine: (1) when there is the possibility of collateral legal consequences imposed on the person raising the issue; (2) when the challenged conduct is likely to evade judicial review and thus, is capable of repetition; and (3) when an otherwise moot issue raises concerns of substantial public interest. *State v. Barclay*, 149 Idaho 6, 8, 232 P.3d 327, 329 (2010).

McEvoy argues the magistrate erred when it imposed his sentences. For the building permit violation and the public nuisance violation, the magistrate imposed a $1,000 fine and 180 days of jail for each count. The magistrate suspended $800 of each $1,000 fine and 180 days of the required jail time were "reserved." However, the district court agreed with McEvoy that the magistrate's definition of "reserved" was unclear and ambiguous. The district court also determined that before and after the sentence was imposed, McEvoy declared he would not accept terms of probation. As a result, the district court ordered the case be returned to the magistrate for resentencing. Because the district court has already ruled in favor of McEvoy and ordered the sentencing issue be returned to the magistrate, McEvoy's argument is moot.

## IV.

## CONCLUSION

For the foregoing reasons, the order of the district court on intermediate appeal from the magistrate judgment of conviction is affirmed.

Chief Judge MELANSON and Judge GRATTON **CONCUR**.